# STATE OF CONNECTICUT *v.* ALEX SOSTRE

Superior Court, Judicial District of Hartford

File No. CR99-0165989

Memorandum filed October 22, 2002

*James E. Thomas*, state's attorney, with whom was *David L. Zagaja*, assistant state's attorney, for the state.

*Karen A. Goodrow*, public defender, with whom was *Michael J. Isko*, assistant public defender, for the defendant.

## INTRODUCTION

LAVINE, J. Pursuant to a motion dated October 2, 2002, the defendant, Alex Sostre, has moved the court to strike the aggravating circumstance alleged under General Statutes § 53a-46a (i) (1), or, in the alternative, to preclude from evidence the defendant's prior felony larceny conviction. The present motion supersedes a similar pleading dated August 8, 2002, entitled "Motion

In Limine Re: Evidence of Other Crimes, Wrongs, or Acts" and a pleading dated September 25, 2002, entitled "Supplemental Motion In Limine Re: Evidence of Prior Felony." The facts in the present case are set out in detail in our Supreme Court's decision in *State* v. *Sostre*, 261 Conn. 111, 802 A.2d 754 (2002), and will not be restated.

The state asserts as its only aggravant that the defendant was convicted of a prior "same felony" as one of the felony larceny offenses he is alleged to have committed at the time he is accused of having murdered East Hartford police Officer Brian Aselton on January 23, 1999. General Statutes § 53a-46a (i) (1) provides that it shall be an aggravant if: "The defendant committed the offense during the commission or attempted commission of, or during the immediate flight from the commission or attempted commission of, a felony and the defendant had previously been convicted of the same felony . . . ." The record in the present case indicates that the defendant pleaded guilty to the felony charge of larceny in the third degree on May 20, 1993, in connection with the theft of an automobile. He was sentenced to four years of incarceration in connection with this larceny conviction, an assault and two violations of probation on July 1, 1993.

In support of his October 2, 2002 motion, the defendant makes the following three assertions. First, pursuant to *Ring* v. *Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the jury must determine any fact that raises the defendant's maximum penalty. Second, the guilty plea which was the basis for the prior larceny conviction is void in that it was not a voluntary or knowing guilty plea. It was rendered without effective assistance of counsel, and, therefore, the conviction resulting from that plea cannot lawfully be used to establish an aggravating factor under

§ 53a-46a (i) (1). Third, the use by the state of a prior conviction to secure a death sentence, when that conviction is based on criminal conduct which occurred at the time the defendant was under eighteen years of age, violates the public policy of Connecticut's death penalty statute, which bars the death penalty for criminal acts that occur when the actor is under eighteen years of age. General Statutes § 53a-46a (h) (1).

The defendant asserts that the factual basis for the motion is that on May 20, 1993, he pleaded guilty in Superior Court to the charge of larceny in the third degree arising from an incident in which the defendant was in a stolen motor vehicle. The incident occurred on April 21, 1992, when the defendant was sixteen years of age. At the time of his guilty plea, the court, *O'Keefe, J.*, assured the defendant that although the state was seeking incarceration, the court would send him "someplace other than jail to deal with" his apparent emotional problems. On July 1, 1993, the sentencing court, *Damiani, J.*, imposed a sentence of incarceration of four years on the charge of assault in the third degree.

## DISCUSSION

The pending motion raises two fundamental issues, neither of which has been addressed previously in this state. The first issue is whether the defendant is entitled to an evidentiary hearing in this court to challenge the validity of his prior felony conviction dating from May, 1993, when the state seeks to use that prior conviction as an aggravant in a death penalty proceeding. If the defendant is so entitled, the second issue concerns the proper scope of any such hearing and which party has the burden to proceed and persuade as well as what must be proven to prevail. The state contests the defendant's right to an evidentiary hearing. The defendant argues that a hearing is necessary to pursue his claim.

On October 8, 2002, while still evaluating the pending motion, the court decided to permit the defendant to put on evidence in support of his motion. A discussion of the arguments made by the parties provides a useful backdrop to the court's analysis.

The state has argued that because the defendant never directly appealed, nor moved to vacate his May, 1993 guilty plea to larceny in the third degree, he is barred from collaterally attacking the validity of the plea and conviction in the *present* proceeding. The proper forum for such an attack is the habeas court, the state argues, where the defendant is seeking relief.[1] It is also noted that the defendant admitted his guilt to facts underlying the charge of larceny in the third degree when canvassed by the judge in May, 1993. Only after he had been charged in connection with the present case, the state argues, did the defendant, for the first time, raise the claim that his prior plea of guilty was not knowing and voluntary. The defendant was represented by counsel in the May, 1993 proceeding, the state notes, and the conviction, entered more than nine years ago, is, therefore, strongly presumed to be valid. *United States* v. *Medlock*, 12 F.3d 185, 189 (11th Cir.), cert. denied, 513 U.S. 864, 115 S. Ct. 180, 130 L. Ed. 2d 115 (1994).

The defendant argues in response that because the state seeks to use the prior felony conviction as an aggravant under our death penalty statutes, the court has an obligation to examine the constitutional validity of the plea. The defendant asserts that the prior conviction is being used in the present proceeding as a sentencing enhancement to increase the maximum available sanction into a possible penalty of death. The defendant emphasizes that he is not seeking to withdraw the plea or have it vacated. Rather, he is seeking

---

[1] The defendant filed a petition for habeas corpus, seeking invalidation of the May, 1993 guilty plea to larceny in the third degree. The petition was subsequently dismissed. *Sostre* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV02-0003751S (October 29, 2002) (*Fuger, J.*).

to prevent the *use* of the conviction in the present proceeding. In a death penalty case, the defendant asserts, the court has a duty to examine the constitutional validity of the previous guilty plea to prevent injustice from occurring. The defendant asserts the prior plea is void because it is constitutionally defective.

The state is correct when it asserts that, as a general proposition, the usual forum for an attack on a prior conviction is the habeas court. *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 412–13, 589 A.2d 1214 (1991); *Guadalupe* v. *Commissioner of Correction*, 68 Conn. App. 376, 384–87, 791 A.2d 640, cert. denied, 260 Conn. 913, 796 A.2d 557 (2002). The habeas court would, in the normal noncapital case, be the appropriate postconviction forum to determine if the May, 1993 plea was not made knowingly and voluntarily, as the defendant claims, or, if ineffective assistance of counsel should, or could, result in the vacating of the plea. *State* v. *Crespo*, 246 Conn. 665, 688, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). Emphasizing the importance of society's interest in the finality of judgments, our Appellate Court has held that the jurisdiction of the sentencing court terminates following the imposition of sentence and that a sentence imposed within statutory limits is generally not subject to review. *State* v. *Mollo*, 63 Conn. App. 487, 490, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001). In that regard, Practice Book § 39-26 states that a defendant "may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. . . ." After acceptance, this provision provides that the defendant may withdraw a plea only upon proof of one of the grounds enumerated in Practice Book § 39-27. Practice Book § 39-26 further provides: "A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

These general propositions, however, do not specifically address the issue here, in light of the state's desire to use the prior felony conviction to elevate the available penalty into a penalty of death.

There is no Connecticut case law directly on point, but there are noncapital decisions which are generally relevant, although the facts vary widely from those in the present case. In *Wilson* v. *Warden*, 26 Conn. Sup. 464, 227 A.2d 265 (1967), the court confronted the issue of whether a prior uncounseled felony conviction of a defendant properly could be treated as a previous conviction for the purpose of Connecticut's habitual offender statute. The court held that it could *not.* Id., 466; see also *United States ex rel. Brown* v. *Reincke*, 266 F. Sup. 83, 86 (D. Conn. 1966) (holding that defendant's uncounseled, 1943 pre-*Gideon*[2] conviction could *not* be used by state in determining whether defendant qualified as habitual offender). Although acknowledging that "collateral attacks on judgments are not favored," the Supreme Court in *State* v. *Wright*, 198 Conn. 273, 283, 502 A.2d 911 (1986), a case involving a persistent dangerous felony offender charge, nonetheless evaluated the validity of an underlying guilty plea relied on by the state. In *State* v. *Schaeffer*, 5 Conn. App. 378, 498 A.2d 134 (1985), the defendant sought to withdraw his guilty plea two days after being sentenced. Notwithstanding the Practice Book's prohibition against withdrawing pleas after sentencing, the court permitted the plea to be withdrawn, reversing the judgment of the trial court. The *Schaeffer* court stated: "If it is apparent on the record that a defendant's constitutional rights were infringed during the plea taking proceeding . . . a plea may be withdrawn even after the sentence proceeding has concluded. . . . If the record does not show that the plea was both voluntary and knowing, the plea was obtained in violation of the due process rights of the

---

[2] *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

defendant and is void. . . . *A plea which is invalid ab initio because of a deprivation of due process does not become any more valid after sentence is imposed and the sentencing proceeding has concluded. The rules of finality of pleas apply only to those which are valid in the first place.*" (Citations omitted; emphasis added.) Id., 386; see *State* v. *Orsini*, 187 Conn. 264, 278–80, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982) ("We accept the basic premise advanced by the defendant that a conviction which has been procured in violation of constitutional rights cannot be used to increase the punishment which would ordinarily be permissible. . . . [O]ur review of claims not seasonably brought to the attention of the trial court is limited, even when constitutional considerations are involved, to those instances where the record clearly demonstrates a deprivation of a fundamental constitutional right." [Citations omitted.]); *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 780, 617 A.2d 933 (1992) ("[t]he trial court is obligated to provide the mechanism for the defendant to withdraw his plea and there is no affirmative obligation placed on the defendant to make a motion to withdraw the plea after the imposition of a sentence that does not comport with the plea agreement"); see also *State* v. *McElveen*, 261 Conn. 198, 205, 802 A.2d 74 (2002) ("[w]e have determined that a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief"); *State* v. *Morishige*, 65 Haw. 354, 652 P.2d 1119 (1982) (trial court improperly foreclosed defendant's attempts to demonstrate ineffectiveness of counsel in prior cases on which extended and mandatory term of imprisonment was predicated).

United States Supreme Court decisions, and opinions of federal circuit courts, make it clear that federal district courts often review the validity of prior convictions

which the state seeks to use as a sentence enhancer. See, e.g., *Burgett* v. *Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967) (unconstitutional conviction obtained against uncounseled defendant may not be used to support guilt or enhance punishment for another offense); *United States* v. *Houman*, 234 F.3d 825 (2d Cir. 2000) (courts must review prior convictions that are used to enhance sentences to determine whether defendant was represented by counsel); *United States* v. *Medlock*, supra, 12 F.3d 185 (same).[3]

In *Medlock*, the court stated: "The question presented for our review is whether a defendant may challenge in federal sentencing proceedings the constitutional validity of prior convictions when such convictions are offered by the government for sentence enhancement under the Armed Career Criminal Act. Our decision is controlled by *United States* v. *Roman*, 989 F.2d 117 (11th Cir. 1993) (en banc), [cert. denied, 511 U.S. 1129, 114 S. Ct. 2139, 128 L. Ed. 2d 868 (1994)]. *Roman* involved a defendant's challenge at sentencing to the constitutional validity of an earlier state court conviction forming the basis for sentence enhancement under [§§ 4A1.1 and 4A1.2 of the United States Sentencing Guidelines]. According to Roman, the plea was not knowing and intelligent because he did not speak English and the record failed to affirmatively show the presence of an interpreter at the state plea hearing. We held: [W]hen a defendant, facing sentencing, sufficiently asserts facts that show that an earlier conviction is

---

[3] See *Custis* v. *United States*, 511 U.S. 485, 487, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), in which the United States Supreme Court held that a defendant has no right—with the sole exception of convictions obtained in violation of the right to counsel—to attack collaterally the validity of previous state convictions used to enhance his sentence under the federal Armed Career Criminal Act of 1984, 18 U.S.C. § 924 (e). In *People* v. *Horton*, 11 Cal. 4th 1068, 1131–36, 906 P.2d 478, 47 Cal. Rptr. 2d 516 (1995), cert. denied, 519 U.S. 815, 117 S. Ct. 63, 136 L. Ed. 2d 25 (1996), the California Supreme Court rejected the argument that *Custis* required a modification of California law.

presumptively void, the Constitution requires the sentencing court to review this earlier conviction before taking it into account. . . . We noted, however, that the kinds of cases that can be included in the presumptively void category are small in number and are perhaps limited to uncounseled convictions." (Citations omitted; internal quotation marks omitted.) *United States* v. *Medlock*, supra, 12 F.3d 187–88.

State cases addressing this subject, in the noncapital context, take varying approaches, as noted by Justice O'Connor in her opinion for the United States Supreme Court in *Parke* v. *Raley*, 506 U.S. 20, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992): "For much of our history, it appears that state courts altogether prohibited defendants in recidivism proceedings from challenging prior convictions as erroneous, as opposed to void for lack of jurisdiction. . . . In recent years state courts have permitted various challenges to prior convictions and have allocated proof burdens differently. Some, like the Sixth Circuit, evidently place the full burden on the prosecution. . . . Others assign the entire burden to the defendant once the government has established the fact of conviction. . . . Several, like Kentucky, take a middle position that requires the defendant to produce evidence of invalidity once the fact of conviction is proved but that shifts the burden back to the prosecution once the defendant satisfies his burden of production. . . . Under the Armed Career Criminal Act, 18 U.S.C. § 924 (e), Courts of Appeals have placed on the defendant the entire burden of proving the invalidity of a prior conviction based on a guilty plea." (Citations omitted.) *Parke* v. *Raley*, supra, 32–33.

The defendant has brought to the court's attention numerous state court cases, particularly California cases, which permit defendants, in capital felony penalty cases, to attack the constitutional validity of prior convictions on which the state is relying to obtain a penalty of death. See, e.g., *People* v. *Horton*, 11 Cal. 4th

1068, 906 P.2d 478, 47 Cal. Rptr. 2d 516 (1995), cert. denied, 519 U.S. 815, 117 S. Ct. 63, 136 L. Ed. 2d 25 (1996); *Curl* v. *Superior Court*, 51 Cal. 3d 1292, 1296, 801 P.2d 292, 276 Cal. Rptr. 49 (1991) ("We hold that in a capital prosecution, the defendant may challenge the constitutional validity of a prior murder conviction alleged as a prior-murder special-circumstance by a pretrial motion to strike the special-circumstance allegation, and that the defendant is entitled to an evidentiary hearing on such a motion, conducted pursuant to the procedures set forth in *People* v. *Coffey*, [67 Cal. 2d 204, 430 P.2d 15, 60 Cal. Rptr. 457 (1967)] . . . . As we shall further explain, in such a proceeding the defendant seeking to collaterally attack the validity of his prior murder conviction has the burden of proving its constitutional invalidity by a preponderance of the evidence." [Citation omitted.]). The court has reviewed the cases cited by the defendant.

In this court's view, when faced with a motion such as the pending one, it is clearly in the interests of justice that a court hear evidence to ensure that no manifest injustice occurs, particularly in the context of a capital felony case in which a prior felony conviction is being used to seek the death penalty. See *Furman* v. *Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972). As Justice Stewart stated in his concurring opinion in *Furman*: "The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability." Id., 306 (Stewart, J., concurring). In *People* v. *Horton*, supra, 11 Cal. 4th 1134, while evaluating this issue, the California Supreme Court stressed the constitutional requirement for greater reliability in death penalty cases, a common theme in many judicial decisions. Permitting an evidentiary hearing assists in ensuring that reliability. Notwithstanding that the habeas court, in the normal instance, provides the appropriate forum for a full review of the validity of the plea, the trial court does have a duty and a responsibility to ensure that only relevant evidence

is admitted, particularly when the state seeks to use that prior evidence to elevate a penalty to death. Conn. Code Evid. § 4-2. The court may exclude relevant evidence if its probative value is "outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury . . . ." Id., § 4-3. It would offend justice and be highly prejudicial if a prior plea of guilty, which was clearly obtained in violation of a defendant's right to counsel, for example—manifestly not the case here—were to be used as a "prior same felony" in pursuit of the death penalty. To deprive the defendant of the opportunity to demonstrate this sort of a manifest injustice could be error if our Supreme Court were to decide, as the California Supreme Court already has, that defendants in capital cases are entitled to a hearing on this issue.

Reasons of judicial economy also weigh strongly in favor of permitting the court, in its role as arbiter of what evidence is admissible and what is not, to permit an evidentiary hearing. To repeat the previous example, if the state were to attempt to use an uncounseled conviction as a prior same felony conviction, it is preferable that that issue be raised prior to trial, in light of the enormous time, expense and energy invested in death penalty cases. Early resolution of potentially dispositive motions, where possible, is in everyone's interest—including the interests of victims and their families.

In challenging the right of the defendant to contest the validity of his prior conviction in the present proceeding, the state, rightly, points to the presumption of validity that attaches to a previously unchallenged plea of guilty and to the need for finality in criminal proceedings. These are, to be sure, extremely important considerations. They must be accommodated to other values, however, when the state asks the court to place its

imprimatur on the use of a prior felony conviction as an aggravant in a death penalty case. In the absence of any guiding cases from our Supreme Court, the court concludes that the approach taken in California, a state with a highly developed death penalty jurisprudence, provides a good model. The approach adopted by the California Supreme Court strikes a fair and reasonable accommodation between the importance of the presumption of regularity in criminal proceedings and the need for finality, on the one hand, and the imperative of ensuring that constitutionally invalid guilty pleas are not used as aggravants in death penalty cases, on the other hand.

As the California Supreme Court stated in *People* v. *Horton*, supra, 11 Cal. 4th 1068: "As our decision in *Curl* v. *Superior Court*, supra, 51 Cal. 3d 1292, makes clear, when a defendant challenges the validity of a prior conviction, he or she bears the burden of establishing its constitutional invalidity. To meet this burden, it is not enough for a defendant simply to make some showing that a constitutional error occurred in the prior criminal proceedings. A prior conviction carries a *strong presumption of constitutional regularity*, and the defendant must establish a violation of his or her rights that so departed from constitutional requirements as to justify striking the prior conviction." (Emphasis in original; internal quotation marks omitted.) *People* v. *Horton*, supra, 1136.

Additionally, given the fact that the prior larceny guilty plea has not previously been appealed, the fact that there was never an attempt to withdraw or challenge the plea prior to the institution of the present case, and the pendency of the habeas case, logic suggests that the defendant, the party challenging the presumptively valid plea, should bear the burden of persuading the trial court that to permit the use of the prior plea would result in manifest injustice. Since the defendant was represented by counsel at the prior proceeding, it is

the court's view that a strong presumption of regularity and validity attaches to the prior guilty plea. *United States* v. *Medlock,* supra, 12 F.3d 189. Once the state has introduced proof of the fact of the prior conviction; *State* v. *Henton,* 50 Conn. App. 521, 532, 720 A.2d 517, cert. denied, 247 Conn. 945, 723 A.2d 372 (1998)—not a matter of dispute in the present case—the burden should shift to the defendant to establish the constitutional invalidity of the prior plea.

## ANALYSIS OF THE EVIDENCE

As indicated, an evidentiary hearing was held on October 8, 2002. The court has now considered all of the evidence produced at the hearing, including transcripts of the guilty plea hearing on May 20, 1993, and the sentencing hearing of July 1, 1993, the presentence investigation report, copies of the public defender's files and the testimony of the two witnesses called by the defendant, attorneys Dennis O'Toole and Hope C. Seeley. On consideration of the full record and the arguments of counsel, the motion is denied.

The heart of the defendant's argument is that he was misled by the judge during the guilty plea proceeding and that as a consequence, the plea was not entered knowingly and intelligently and is, therefore, constitutionally invalid. This argument is based primarily on the following two colloquies that occurred during the May 20, 1993 plea proceeding, presided over by Judge Thomas O'Keefe. The first relevant excerpt from the transcript is as follows:

"The Court: Was anything causing you to act this way? Were you drinking or using drugs?

"[The Defendant]: No.

"The Court: Just acting crazy, is that right?

"[The Defendant]: I got a problem.

"The Court: Tell me. *Maybe we can design a better program if we knew what the problem was.*

"[The Defendant]: Well, I've got a problem. I don't know my real mother.

"The Court: So, you have a lot of emotional problems you're dealing with?

"[The Defendant]: Yes." (Emphasis added.)

The second excerpt is as follows:

"The Court: Okay. This is your choice to resolve the case this way?

"[The Defendant]: Yes.

"The Court: And I said I wouldn't—the prosecutor is recommending that you go to jail. I told your lawyer I'd try to put you in some alternative to sending you to jail. That's what you were told the agreement was. *I'm going to send you someplace other than jail to deal with your problems.* Is that what you understand the agreement to be?

"[The Defendant]: Yes." (Emphasis added.)

It is not implausible to assert that the court's remarks, when viewed in isolation, could have had the potential to mislead the defendant. The second emphasized statement, however, followed two other statements: first, that "the prosecutor is recommending that you go to jail" and, second, that the judge would *try* to find an alternative to incarceration. The potentially offending statement, therefore, must be viewed in the context of the surrounding remarks which make it clear that incarceration was an option. Moreover, on consideration of the full record, the defendant's argument loses most of its persuasive appeal, for the following reasons.

The very first thing of substance that occurred at the plea hearing was the statement, by attorney O'Toole, the defendant's counsel, concerning the nature of what had been agreed to. The transcript states as follows:

"The Court: What did we talk about for [the defendant]?

"[Defense Counsel]: He's prepared to go to plea. The recommendation was *right to argue for alternative to incarceration with* [presentence investigation]." (Emphasis added.)

Thus, the first characterization of the agreement, by the defendant's counsel, was that there was a *right to argue* for an alternative to incarceration. As the state notes, if there was a right to argue for an alternative to incarceration, then a promise of no incarceration could not have been contemplated. Second, Judge O'Keefe's statement that "maybe" the court could design a better program for the defendant is clearly not the equivalent of a promise of no jail. It can fairly be characterized as a statement of possible intention, but does not constitute a firm promise.

Next, the transcript discloses that the defendant was clearly informed that he faced a period of incarceration well in excess of the four years he received. Later in the transcript, the following appears:

"The Court: The maximum period of incarceration for these offenses [is] thirteen years in prison, $11,000 in fines or up to five years on probation if you got a suspended sentence. Do you understand that?

"[The Defendant]: Yes."

In his testimony on October 8, 2002, attorney O'Toole indicated that he lacked a specific recollection of the May and July, 1993 proceedings. He testified, however, based on his review of relevant documents, that the

defendant was exposed to a prison sentence and that his understanding of the agreement, as counsel, was "a cap of five years, so there was a maximum possibility of incarceration of up to five years." In the course of his representation, he testified that it was his practice to convey to his clients his understanding of what the parameters of a plea agreement were. He has no particular reason to believe he did not discuss the agreement with the defendant in accordance with his usual practice. Most significantly, attorney O'Toole testified that when he told the judge that there was a "recommendation of right to argue," this "meant that there wasn't a firm promise from Judge O'Keefe that the program would be granted, that a presentence investigation would be ordered and then the judge would make his final decision at the time he had reviewed the presentence investigation." Attorney O'Toole reviewed his notes on a file relating to the case. The notes stated that on May 20, there was a pretrial conference, that the client would plead guilty to larceny in the third degree and other offenses, and that "a presentence investigation would be ordered with an alternative incarceration plan, and that there was a cap or a maximum of five years." The negotiations with the prosecutor, in the presence of the judge, attorney O'Toole testified, were that "after the presentence investigation, Judge O'Keefe was going to examine what the alternatives were and, if there was an alternative of placement, that the judge would seriously consider that unless there was some adverse information in the presentence investigation." Additionally, attorney O'Toole testified that he believed, at the time, that it would not have been ethical to have represented to Judge Damiani, the sentencing judge, that the plea should be withdrawn because it violated the plea agreement.

In the court's view, the plea canvass fundamentally complied with relevant Practice Book provisions. Moreover, as the state notes, a defendant can voluntarily

and intelligently waive his rights at a plea proceeding without literal compliance with the prophylactic safeguards of relevant Practice Book provisions. Given the context of the pending motion, the court's focus should be on whether constitutional requirements were satisfied. *State* v. *Williams*, 60 Conn. App. 575, 581,760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000). The court concludes that the defendant was sufficiently informed of his constitutional rights and the rights he was waiving. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Lugo*, 61 Conn. App. 855, 862–63, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001).

What is reflected in the presentence investigation report, and what occurred and did *not* occur at and after the sentencing hearing, provides further persuasive evidence that the defendant understood that a sentence of incarceration was a possibility—indeed, a likelihood—under his guilty plea. At the time of sentencing, Judge Damiani considered the defendant's prior record, the facts relating to the offenses for which the defendant was being sentenced and his personal history. Judge Damiani stated that "[w]hen he was sixteen years old, he got probation for assault third and probation for using without owner's permission. He has had prior probations that haven't worked." The judge then sentenced the defendant to a total effective term of four years, one year less than the five year cap, and one year less than the five years requested by the prosecutor.

The presentence investigation report also contains information that undermines the defendant's argument. The probation officer noted that the defendant admitted to not reporting as his probation officer had requested. The defendant also is quoted as saying, with respect to what could be expected at sentencing. "[W]hatever God says in the judge's mind, that is what will go." This

statement does not reflect a belief that a sentence of no jail time had been promised.

Finally, the sentencing itself does not reflect an understanding by the defendant that he would not be incarcerated. At the sentencing, neither the defendant, nor his counsel, said what they would have been expected to say if a promise of no jail time had been made and broken—namely, that the sentence was a violation of what was promised by Judge O'Keefe. The failure of the defendant and attorney O'Toole to object to the sentence at the time it was pronounced—or, for that matter, at any time until after he was charged in the present case—provides a strong indication of their belief as to what had been promised.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

As discussed previously, relevant case law persuades the court that the defendant should have the opportunity, in the present proceeding, to pursue his claim that his prior guilty plea was not made knowingly and intelligently. The defendant also claims that his counsel, attorney O'Toole, was ineffective in his representation of the defendant at the prior plea hearing. While it is not entirely clear to the court that this issue is properly raised in the present proceeding, the court assumes, arguendo, that it is properly before the court, and having evaluated the claim, rejects it.

To obtain relief on the ground of ineffective assistance of counsel, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the result. *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State* v. *Vega*, 259 Conn. 374, 387, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). It must be demonstrated both that counsel's performance was deficient and that there is a reasonable probability that,

but for counsel's errors, the result of the proceeding would have been different. *Mitchell* v. *Commissioner of Correction*, 68 Conn. App. 1, 9, 790 A.2d 463, cert. denied, 260 Conn. 903, 793 A.2d 1089 (2002). "[R]easonable probability" requires the petitioner to show a probability "sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 694. When claims of ineffective assistance arise from the plea negotiation process, to satisfy the prejudice requirement, a defendant must show that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Guadalupe* v. *Commissioner of Correction*, 68 Conn. App. 376, 381, 791 A.2d 640, cert. denied, 260 Conn. 913, 796 A.2d 557 (2002).

The defendant claims that attorney O'Toole was ineffective in a number of ways. First, attorney Seeley testified that he was ineffective because he remained silent when Judge Damiani sentenced the defendant in contravention of the plea agreement, which she construes to contain a promise of no jail time. Counsel should have sought what was promised or asked for a continuance to discuss withdrawal of the plea with his client. Second, counsel was ineffective in his failure to prepare properly for the sentencing. He should have sent his client for a mental health evaluation and obtained school records to find out if there were psychological records in the school records. He also should have disputed the statement in the presentence investigation report that the defendant had no known psychiatric problems. Counsel additionally should have assured the presence of the defendant's mother at the sentencing. Attorney Seeley conceded that she did not have knowledge of any conversations that might have occurred between attorney O'Toole and his client, or conferences in chambers.

The argument that attorney O'Toole provided ineffective assistance by failing to object to Judge Damiani's

sentence or seeking a continuance to evaluate an attempt to withdraw the guilty plea has been touched on previously. The faulty premise of this argument is that a firm promise had been made to the defendant and that it was breached. For the reasons stated previously, the court rejects the premise of the defendant's argument. The court concludes that no promise was made or breached. Therefore, any claim that attorney O'Toole—who testified that he believed it would have been unethical to move to withdraw the guilty plea— was ineffective for failing to dispute the sentence, to seek a continuance or to move to withdraw the plea, must fail.

With the wisdom of hindsight, it is possible to argue that the defendant would have benefited from a psychological evaluation. The cases make it clear, however, that in evaluating whether counsel's performance fell below an objective standard of reasonableness, scrutiny of counsel's performance must be "highly deferential" and that every effort must be made to avoid "the distorting effects of hindsight . . . ." (Internal quotation marks omitted.) *Doehrer* v. *Commissioner of Correction*, 68 Conn. App. 774, 778, 795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002). As *Doehrer* notes, counsel is "strongly presumed" to have rendered adequate assistance. (Internal quoatation marks omitted.) Id. At the time of the entry of the guilty plea, the record does not reflect that counsel of average competence would have sought such an evaluation. See *Hill* v. *Lockhart*, 474 U.S. 52, 58–60, 106 S. Ct. 366, 80 L. Ed. 2d 203 (1985). The defendant's statements during the plea hearing that: "Well, I've got a problem. I don't know my real mother," and his agreement with the judge's question as to whether he has "a lot of emotional problems" to deal with do not, without the benefit of hindsight, provide a reasonably clear indication that a detailed psychological evaluation should have been sought. Cf. *State* v. *Williams*, 58 Conn. App. 125, 135, 752 A.2d 1120 (nothing in record indicating defendant

had psychiatric disability), cert. denied, 254 Conn. 915, 759 A.2d 509 (2000). Moreover, it is unclear to the court how, in the defendant's view, obtaining an evaluation would have affected the defendant's decision to plead guilty or altered the outcome at sentencing. The plea canvass established that the evidence against the defendant was overwhelming. The prosecutor stated as a factual basis the following:

"[The Prosecutor]: Factual basis, on April 21, 1992, about four o'clock in the morning . . . Hartford police received a report . . . from a concerned citizen that a tan Mazda with a broken window was being driven in the Park-Washington Street area that was suspicious. Police saw the vehicle being driven with the broken window. The defendant jumped out of the car and tried to flee. A chase ensued. The police eventually caught up with the defendant, never lost sight of him. He did have tucked in his waistband a screwdriver. The vehicle was a 1988 Mazda 323 with a damaged ignition in addition to the broken window."

The defendant also admitted his guilt to his probation officer. The agreement resolved numerous matters and limited the defendant's exposure substantially. The claim that he would have decided against pleading guilty had he been evaluated is highly speculative and unpersuasive. Nor, given his criminal history and the presentence investigation report, is it convincing to argue that an evaluation somehow would have altered his sentence.

The defendant claims, however, that counsel was not prepared for the sentencing. It is true that attorney O'Toole's remarks were brief. Judge Damiani, however, sentenced the defendant to one year less than the five year cap, and one year less than what the state argued for. Moreover, the probation officer noted in the presentence investigation report that the defendant had been on probation at the time of the offense and had not

reported to probation as directed. The defendant's supervising probation officer reported that the defendant "made no attempt to adjust to probationary rules and [regulations]." It was also noted in the presentence investigation report that the case had been referred to the Connecticut Prison Association for an alternative incarceration program assessment plan to be developed, but that "it is the writer's opinion that [the defendant] is not the type of candidate who will progress with said attached plan." In retrospect, one could argue that counsel should have said more. The court is unwilling to conclude, however, given all the circumstances, that his performance was deficient.

Even if it is assumed, arguendo, that counsel's performance was lacking, there is no basis to conclude that there is a reasonable probability that more extensive sentencing remarks would have altered the sentence in light of the nature of the agreement and the unfavorable conclusions stated in the presentence investigation report. Under all the circumstances, there is nothing to suggest that a different approach by counsel at sentencing, including ensuring the presence of the defendant's mother, would have resulted in a sentence of no incarceration. While other counsel might have handled the sentencing differently, the court concludes that attorney O'Toole's performance fell within the broad range of professionally reasonable judgments protected under *Strickland* v. *Washington*, supra, 466 U.S. 699–701, under all the circumstances.

In the court's view, the defendant has failed to bear his burden of demonstrating by a preponderance of the evidence that the prior felony plea was unconstitutional. Moreover, in light of the court's conclusions, the court is of the view that even if the burden is placed on the state to demonstrate the constitutional validity of the prior felony plea, it has met its burden. The court also rejects the claim that counsel's performance was

deficient, under all the circumstances, and rejects as well the argument that the defendant was prejudiced by counsel's performance. In summary, fundamental fairness does not require that the defendant's prior felony conviction be excluded from evidence at this trial.

## CONCLUSION

For the aforementioned reasons, an evidentiary hearing was permitted in connection with the defendant's motion. On consideration of all of the evidence, the motion is denied.[4]

---

[1] This court has already ruled on the argument that the use of a prior same felony conviction, based on conduct that occurred before the defendant reached the age of eighteen, violates Connecticut's death penalty statute, which bars the death penalty for criminal acts which occur when the actor is under eighteen years of age. That argument is again rejected for the reasons previously stated.