******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN VITALE *v.* COMMISSIONER OF CORRECTION
(AC 39556)

Alvord, Mullins and Beach, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of nolo contendere, of sexual assault in the fourth degree, sought a writ of habeas corpus, claiming that his conviction was illegal because he had been made to plead guilty and was sentenced without having his attorney present. Although the petitioner was discharged from his conviction in 1979, he claimed that the collateral consequences of that conviction adversely affected his parole and his treatment by the Department of Correction as a sex offender. He further asserted that, on the basis of collateral consequences, the habeas court could hear his claim and vacate his conviction because it was obtained in violation of the right to counsel under *Gideon* v. *Wainwright* (372 U.S. 335), even though he was not still serving the sentence. The habeas court rendered judgment sua sponte dismissing the petition for a writ of habeas corpus, concluding that it lacked jurisdiction over the claims in the petition concerning the decisions of the parole board and the classifications of the petitioner by the Department of Correction. Thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court, claiming, inter alia, that the habeas court improperly concluded that it lacked subject matter jurisdiction over his habeas petition. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for certification to appeal: that court properly determined that it lacked subject matter jurisdiction to the extent that the petition for a writ of habeas corpus sought to challenge the expired sexual assault conviction, as the petitioner submitted no authority to support his claim that the expired sexual assault conviction could be vacated, United States Supreme Court precedent that has addressed the use of convictions obtained in the absence of counsel did not permit the petitioner to attack the expired conviction in the absence of a sentence enhancement, and other federal courts have recognized that procedural defenses apply to *Gideon* claims, thus refuting the petitioner's assertion that a *Gideon* claim may be raised without limitation.

2. The habeas court did not abuse its discretion in denying the petition for certification to appeal as to the petitioner's challenge to the conditions of his parole and his classification as a sex offender by the Department of Correction; parole eligibility status does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction, and because the petitioner failed to plead that the stigmatizing classification of him as a sex offender was false and that he was compelled to participate in sex offender treatment, he failed to allege sufficient facts to assert a cognizable liberty interest that would afford the habeas court jurisdiction over his claim.

3. The petitioner could not prevail on his claim that the violation of his right to counsel under article first, § 8, of the state constitution was sufficient to establish jurisdiction in the habeas court to adjudicate his claims; the petitioner's briefing failed to address the central issue presented in his appeal and the authorities he cited did not support his claim under the state constitution.

Argued September 26—officially released December 26, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Oliver, J.*, dismissed the petition and rendered judgment thereon; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*James B. Streeto*, senior assistant public defender, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, and *James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *George Jepsen*, attorney general, and *David S. Shepack*, state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, John Vitale, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly concluded that it lacked subject matter jurisdiction over his petition. We conclude that the habeas court properly determined that it lacked subject matter jurisdiction over the petition and, therefore, that it did not abuse its discretion by denying the petitioner's petition for certification to appeal. Accordingly, we dismiss the appeal.

The following procedural history is relevant to this appeal. On July 5, 2016, the petitioner, representing himself, filed a petition for a writ of habeas corpus. In his petition, he noted, under "Sentence(s)," "1 year concurrent; Gen. Stat. 53a-73a (2) sex assault 4th degree." He provided the date of sentencing as September 19, 1980, and indicated that the sentence was to be served concurrent with a life sentence. He represented that he pleaded nolo contendere and that he did not appeal from the judgment of his conviction.

The petitioner claimed in his petition that his conviction was illegal because he "was made to plead guilty and was sentenced without my lawyer of record (R. Chase) being there with me." The petitioner claimed that his incarceration or sentence was illegal because "collateral consequence of unlawful conviction for SA 4th adversely affects my classification and parole; and parole release, (my treatment while in D.O.C. and on parole)." The petitioner represented that he had tried to raise the claim in a previous petition, but it was declined on December 22, 2015. He further stated that the court, *Oliver*, *J*., had granted his request for counsel to assist in the appeal of the dismissal of the previous petition, but the appeal was never filed. Although the previous petition is not part of the record, the petitioner's appendix includes the trial court's dismissal, which stated that "[t]he habeas corpus petition is declined and is being returned because the court lacks jurisdiction per Connecticut Practice Book § 23-24 (a) (1).[1] As the petitioner admits, in paragraph 1 (e) of his petition that he [was] discharged from the challenged conviction in 1979, the court declines to issue the writ, as the petitioner is not in custody on the conviction being challenged." (Footnote added.)

In the petition that is the subject of this appeal, the petitioner claimed that he was asking the court to permit him to withdraw his guilty plea on the sexual assault charge. In a handwritten attachment, the petitioner elaborated on his claims. He alleged that his 1980 conviction for sexual assault in the fourth degree was "obtained by (no contest) guilty plea and sentence

imposed without counsel present." He claimed, based primarily on United States Supreme Court precedent, that "[a] conviction obtained in violation of the right to counsel under *Gideon* [v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)] has special status such that the claim may be heard and the conviction vacated based on collateral consequences, even though the habeas petitioner is not still serving the sentence."

The petition asserted the following facts. On September 19, 1980, the petitioner was "held in lieu of bond at the Litchfield jail, scheduled to appear in court for sentencing on his felony murder convictions . . . and for disposition of the case charging him with a nonrelated sexual assault; while in [the] custody of the Commissioner of Correction." The petitioner had retained Attorney Robert Chase to represent him for the sexual assault case and Attorney Warren Luedecker to represent him for the felony murder case. The petitioner had obtained a marriage license and Attorney Luedecker represented to the deputies at the Litchfield jail that the court, *Pickett*, *J.*, had granted permission for the petitioner to be wed at a neighboring office of a justice of the peace. When the deputies and the petitioner arrived late to court, Judge Pickett "responded to the deception by Attorney Luedecker played on the deputies and the lateness . . . by addressing [the] petitioner and his lawyer concerning the situation. The court directed counsel into a separate room where they were directed to remain for some period of time." The court "put the petitioner to plea, accepted a nolo contendere plea to sexual assault in the fourth degree and imposed a one year sentence (time had already been served), all done without Attorney Chase or other counsel available . . . ." The petitioner's counsel was present for the sentencing on the felony murder case.

The petitioner alleged that although he "has had his parole violated for technical violations, all nonviolent, since he was first released to parole in 1985, at no time until 2011 did the conviction of fourth degree sexual assault (unwanted touching) have any bearing on his dealings with the parole board or his various parole officers." The petitioner claimed that he had been on parole for fifteen years without the sexual assault conviction having any bearing on his parole. The petitioner alleged: "As of August 4, 2015, [the] petitioner is incarcerated [on a] violation of parole, which consists of using a cell phone in violation of the conditions imposed under the special monitoring unit for sex offenders. [The] petitioner has been advised that his 1980 unwanted touching conviction, obtained in violation of *Gideon*, will have [the] petitioner treat[ed] the same as if it was sexual assault in the [first] degree."

By order dated July 26, 2016, the habeas court, *Oliver*, *J.*, sua sponte dismissed the petition for habeas corpus, stating that "[t]he habeas corpus petition is dismissed

and is being returned pursuant to Connecticut Practice Book § 23-29 (1),[2] as the court lacks jurisdiction over the claims set forth concerning the decisions of the parole board and [Department of Correction] classifications." (Footnote added.) On August 5, 2016, the petitioner filed a petition for certification to appeal, in which he stated the grounds as follows: "Judge is wrong: I pleaded guilty without assistance of counsel, which states a claim even though sentence expired. *Gideon* [v. *Wainwright*, supra, 372 U.S. 335]; *Daniels* v. *United States*, 532 U.S. 374, 378 [121 S. Ct. 1578, 149 L. Ed. 2d 590] (2001)." In his application for waiver of fees, costs and expenses and appointment of counsel on appeal, the petitioner stated: "Conviction must be vacated even if [there are] no direct or collateral consequences." On August 5, 2016, the habeas court denied the petition for certification to appeal and granted the petitioner's application for appointment of counsel and waiver of fees on appeal. This appeal followed.

Our Supreme Court has stated: "We begin by setting forth the applicable standard of review and procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), we concluded that [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), we incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . *Simms* v. *Warden*, supra, 230 Conn. 616. A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. Id. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Castonguay* v. *Commissioner of Correction*, 300 Conn. 649, 657–58, 16 A.3d 676 (2011).

We next address the relevant principles regarding

construction of the habeas petition. "Because this appeal arises from the habeas court's ruling dismissing the petition on the basis that the court lacked jurisdiction, we take the facts to be those alleged in the petition, including those facts necessarily implied from the allegations, construing them in favor of the petitioner for purposes of deciding whether the court had subject matter jurisdiction." *Anthony A.* v. *Commissioner of Correction*, 326 Conn. 668, 670, 166 A.3d 614 (2017). We also note that "[i]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 549, 911 A.2d 712 (2006). However, "[t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings . . . to decide claims not raised." (Internal quotation marks omitted.) *Pentland* v. *Commissioner of Correction*, 176 Conn. App. 779, 786, 169 A.3d 851 (2017).

"[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, 170 Conn. App. 747, 751, 155 A.3d 823, cert. denied, 325 Conn. 902, 155 A.3d 1271 (2017). Accordingly, we will "conduct a plenary review of the petitioner's petition to determine whether the habeas court properly concluded that it lacked subject matter jurisdiction to consider the petition." *Byrd* v. *Commissioner of Correction*, 177 Conn. App. 71, 79,    A.3d    (2017).

I

Before addressing the substance of the petitioner's claims, we review the relevant authority upon which the petitioner relies. Pursuant to General Statutes § 52-466 (a) (1),[3] "[a] habeas court has subject matter jurisdiction to hear a petition for habeas corpus when the petitioner is in custody at the time that the habeas petition is filed."[4] (Internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, supra, 170 Conn. App. 752. Our Supreme Court has explained that "the custody requirement in § 52-466 is jurisdictional in nature because the history and purpose of the writ of habeas corpus establish that the habeas court lacks the power to act on a habeas petition absent the petitioner's

allegedly unlawful custody." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 537; see also *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 525, 876 A.2d 1178 (2005) ("Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus." [Internal quotation marks omitted.), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 747, 754, 91 A.3d 862 (2014). "Our Supreme Court has held that the party bringing the action bears the burden of proving that the court has subject matter jurisdiction. . . . [W]ith regard to subject matter jurisdiction, jurisdictional facts are [f]acts showing that the matter involved in a suit constitutes a subject-matter consigned by law to the jurisdiction of that court . . . ." (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 619, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010).

"[I]n order to satisfy the custody requirement of § 52-466, the petitioner [must] be in custody on the conviction under attack at the time the habeas petition is filed. . . . [C]ollateral consequences flowing from an expired conviction do not render a petitioner in custody under § 52-466; rather, such a claim of confinement or custody and any accompanying loss of liberty [stem] solely from [a petitioner's] current conviction." (Internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, supra, 170 Conn. App. 752; see also *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 520, 530–31 (although petitioner claimed that the collateral consequences of his 1992 conviction, in the form of an enhancement of his 1999 sentence, were sufficient to render him in custody under § 52-466, petition sought to directly attack the 1992 conviction, and petitioner was no longer in custody on that conviction); *McCarthy* v. *Commissioner of Correction*, 274 Conn. 557, 560, 562–63, 877 A.2d 758 (2005) (holding that petitioner whose thirty-four year old burglary conviction was used in federal prosecution under the Armed Career Criminal Act of 1984, 18 U.S.C. §§ 922 [g] [1] and 924 [e] [1] and [2] [(2012)], was not in custody for the expired conviction, and noting that "[t]o the extent that the petitioner claims that he is in custody or has been deprived of his liberty . . . because his 1958 conviction was used to enhance his current federal sentence, his loss of liberty stems solely from his current federal conviction. . . . Consequently, the petitioner can pursue his claim, if at all, only by way of a petition for a writ of habeas corpus attacking his current federal sentence." [Citations omitted; internal quotation marks omitted.]). Moreover, this court has addressed the effect of an expired conviction on parole eligibility,

finding such collateral consequences insufficient to render a petitioner in custody on the expired conviction. See *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 181–82, 55 A.3d 588 (2012) ("Because parole eligibility neither affects the term of the sentence for the assault conviction nor mandates release at a particular time, the fact that the petitioner's eligibility for parole was extended from 50 percent of time served to 85 percent of time served on his still effective term of imprisonment of twenty-eight years did not cause the petitioner to suffer a present restraint with respect to the assault conviction, nor did it affect when the sentence for the assault conviction expired. Rather, the change in parole eligibility is a collateral consequence of the assault conviction."), cert. granted on other grounds, 307 Conn. 947, 60 A.3d 960 (2013) (appeal withdrawn May 28, 2013).

"It is well established that, in determining the scope of the writ of habeas corpus under state law, we look to the scope of the writ under federal law." *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 529 n.17 (concluding that "the legislature did not intend to make the state writ of habeas corpus broader than its federal counterpart"). Like § 52-466, the federal habeas statutes provide the United States district courts with jurisdiction to hear petitions for habeas relief only from petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241 (c) (3) (2012); see also 28 U.S.C. § 2254 (a) (2012). The United States Supreme Court has interpreted the custody requirement as mandating "that the habeas petitioner be in custody under the conviction or sentence under attack at the time his petition is filed." (Internal quotation marks omitted.) *Maleng* v. *Cook*, 490 U.S. 488, 490–91, 109 S. Ct. 1923, 1925, 104 L. Ed. 2d 540 (1989); see also *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 571 and n.7, 877 A.2d 761 (2005) (noting our Supreme Court's adoption of *Maleng*).

In *Maleng*, the petitioner had been convicted in 1958 of robbery in state court and sentenced to twenty years of imprisonment. *Maleng* v. *Cook*, supra, 490 U.S. 489. While he was on parole in 1976 from that sentence, he was convicted of new state offenses and was sentenced in 1978 to two life terms of imprisonment and a ten year term of imprisonment. Id. Pursuant to Washington state law, the 1958 conviction increased by several years the mandatory minimum term of imprisonment that the petitioner was required to serve on his 1978 sentences. Id. Also in 1976, the petitioner was convicted in federal court of bank robbery and conspiracy and was sentenced to thirty years imprisonment. Id. In 1985, the petitioner, incarcerated in federal prison, filed a pro se petition for a writ of habeas corpus. Id. In his petition, he "listed the 1958 Washington conviction as the conviction under attack" on the ground that the state court

had failed to conduct a competency hearing. (Internal quotation marks omitted.) Id., 490. The petitioner also alleged that the 1958 conviction "had been used illegally to enhance his 1978 state sentences, which he had not yet begun to serve." Id. The issue before the United States Supreme Court was whether the petitioner was "in custody" within the meaning of 28 U.S.C. § 2241 (c) (3).[5] Id.

The court determined that the collateral consequences suffered by the petitioner, specifically, the enhancement of his 1978 state sentences, were insufficient to render him "in custody" on his expired 1958 conviction. Id., 492. The court stated: "While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction. Since almost all [s]tates have habitual offender statutes . . . a contrary ruling would mean that a petitioner whose sentence has completely expired could nonetheless challenge the conviction for which it was imposed at any time on federal habeas. This would read the 'in custody' requirement out of the statute . . . ." Id. The court concluded that "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Id.

The court did conclude, however, that the petitioner was "in custody" on his 1978 state sentences that he had not yet begun to serve. Id., 493. Because the "habeas petition, construed with the deference to which pro se litigants are entitled . . . can be read as asserting a challenge to the 1978 sentences, as enhanced by the allegedly invalid prior conviction," the court concluded that the petitioner had "satisfied the 'in custody' requirement for federal habeas jurisdiction." (Citation omitted; emphasis omitted.) Id., 493–94. The court expressly limited its holding to "the narrow issue of 'custody' for subject-matter jurisdiction of the habeas court" and expressed "no view on the extent to which the 1958 conviction itself may be subject to challenge in the attack upon the 1978 sentences which it was used to enhance." Id., 494; see also *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 512–16 (discussing *Maleng*).

The United States Supreme Court has also addressed the issue of a conviction obtained without representation by counsel (uncounseled conviction) that is used either "to support guilt or enhance punishment" for another offense. *Burgett* v. *Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967). Under *Gideon* v. *Wainwright*, supra, 372 U.S. 345, the sixth amendment right to counsel was made applicable to state prosecutions through the due process clause of the fourteenth

amendment. The court subsequently has afforded special status to *Gideon* claims in the context of a sentence enhancement that was based on a prior conviction obtained where there was a failure to appoint counsel in violation of the sixth amendment. Specifically, the court has recognized that "[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case." *Burgett* v. *Texas*, supra, 115.

In *Burgett*, the defendant was charged under a Texas recidivist statute with having been convicted of four previous felonies. Id., 111. Evidence of the prior convictions, including a certified record of a conviction from Tennessee, was presented before the jury. Id., 111–12. The defendant objected on the ground that the conviction was void under state law because he had not been represented by counsel in violation of the fourteenth amendment. Id., 112. The court in *Burgett* concluded that the prior conviction, obtained in violation of *Gideon*, which was introduced as evidence in a subsequent prosecution, was inherently prejudicial. Id., 115. Although the state court had given an instruction to the jury to disregard the prior conviction, the error was not harmless beyond a reasonable doubt, and it required reversal of the judgment. Id.

Following *Burgett*, the Supreme Court in *United States* v. *Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972), affirmed the decision of the Unites States Court of Appeals for the Ninth Circuit remanding the case to the District Court for reconsideration of the defendant's sentence for bank robbery, where the record revealed that the sentencing judge had given specific consideration to prior convictions that had been obtained in violation of *Gideon*. The defendant collaterally attacked the prior convictions in California state court, arguing that they were obtained in violation of the right to counsel. Id., 445. The California state court noted the "propriety of our present examination of constitutionally challenged out-of-state priors *as they relate to California adjudication of habitual criminality*." (Emphasis added.) *In re Tucker*, 64 Cal. 2d 15, 16–17, 409 P.2d 921, 48 Cal. Rptr. 697 (1966). The petitioner thereafter initiated an action pursuant to 28 U.S.C. § 2255 in the federal District Court in which he had been convicted of the bank robbery.[6] *United States* v. *Tucker*, supra, 445. Because the sentence was "founded at least in part upon misinformation of constitutional magnitude"; id., 447; the United States Supreme Court affirmed the judgment of the Ninth Circuit remanding the case to the trial court to reconsider the defendant's sentence without consideration of the prior convictions, which were invalid under *Gideon*. Id., 449.

The United States Supreme Court also has addressed the use of unconstitutional convictions obtained in vio-

lation of the right to counsel as used to enhance a sentence under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924 (e) (ACCA).[7] In *Custis* v. *United States*, 511 U.S. 485, 488, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), the defendant sought to collaterally attack during his federal sentencing proceeding the validity of two prior convictions used to enhance his sentence under the ACCA. He attacked "his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a 'stipulated facts' trial." Id., 496. The court declined to extend *Burgett*'s and *Tucker*'s recognition of "the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon*." Id.; see also *State* v. *Jusino*, 163 Conn. App. 618, 627, 137 A.3d 65 (citing *Custis* for proposition that "a defendant has a constitutional right to collaterally attack a prior conviction during a federal sentencing proceeding only if the conviction was obtained in violation of the defendant's right to counsel under *Gideon*"), cert. denied, 321 Conn. 906, 136 A.3d 643 (2016). The court in *Custis* reasoned that "principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court 'to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t].' " *Custis* v. *United States*, supra, 497. The court noted that the defendant was still in custody on his state convictions at the time of his federal sentencing and, therefore, he could attack those sentences in state court or through federal habeas review. Id.

In *Daniels* v. *United States*, supra, 532 U.S. 377, the petitioner filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, which permits the court to vacate a sentence on the ground that it was imposed in violation of the constitution. He contended that his two robbery convictions did not qualify as predicate offenses under the ACCA, because, he alleged, they were unconstitutional as the product of faulty guilty pleas and ineffective assistance of counsel. Id. The Supreme Court in both *Custis* and *Daniels* recognized that the failure to appoint counsel constituted "a unique constitutional defect"; id., 382; *Custis* v. *United States*, supra, 511 U.S. 496; that justified an exception permitting a collateral attack on prior convictions during the course of a federal sentencing proceeding or potentially on a motion to vacate, set aside, or correct a sentence if the defendant had raised the claim at his federal sentencing proceeding. *Daniels* v. *United States*, supra, 382. Thus, the court held that the rule that a prior conviction may not be attacked during a sentencing

proceeding was subject to only one exception: "If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings." Id. The court in *Daniels* clarified, however, that "[a] defendant may challenge a prior conviction as the product of a *Gideon* violation in a § 2255 motion, but generally *only if he raised that claim at his federal sentencing proceeding.*" (Emphasis added.) Id.

Last, in *Lackawanna County District Attorney* v. *Coss*, 532 U.S. 394, 399, 401–402, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001), the court construed a petition for habeas corpus as a challenge to the petitioner's current sentence, as enhanced by an allegedly invalid prior conviction, which the petitioner claimed was invalid because he did not receive effective assistance of counsel. Specifically, the petitioner alleged that the sentencing judge considered the unconstitutional convictions in calculating his sentence. Id., 400. The court held that "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under [28 U.S.C.] § 2254 on the ground that the prior conviction was unconstitutionally obtained."[8] (Citation omitted.) Id., 403–404. The court noted that an exception to this rule exists where the prior conviction involved a failure to appoint counsel in violation of the sixth amendment. The court concluded that "[w]hen an otherwise qualified § 2254 petitioner can demonstrate that his current sentence *was enhanced on the basis of a prior conviction* that was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, the *current sentence* cannot stand and habeas relief is appropriate." (Emphasis added.) Id., 404; see also *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 517 (recognizing the *Gideon* exception as articulated in *Lackawanna*). The court in *Lackawanna* cautioned, however, that "[a]s with any § 2254 petition, the petitioner must satisfy the procedural prerequisites for relief including, for example, exhaustion of remedies." *Lackawanna County District Attorney* v. *Coss*, supra, 404.

Federal courts applying *Custis*, *Daniels*, and *Lackawanna*, have affirmed the dismissal of habeas petitions where the petitioner has not followed the proper procedures in presenting a claim that an enhanced federal sentence was based on a prior conviction obtained in violation of the right to counsel. See *Brennan* v. *United States*, 646 Fed. Appx. 622, 623 (10th Cir. 2016) (dismissing petition for habeas corpus filed pursuant to § 2241

where petitioner's argument "could have been tested during his federal sentencing and then under § 2255"); *Perkins* v. *Holt*, 410 Fed. Appx. 422, 423 (3d Cir. 2010) (affirming District Court's judgment dismissing petition filed under § 2241, where petitioner raised arguments that could have been raised at his federal sentencing proceeding, on direct appeal, or in a § 2255 motion, explaining that "a *Gideon* violation does not eliminate the need to follow the proper procedures"); *Howard* v. *United States*, 374 F.3d 1068, 1072 (11th Cir. 2004) ("[a] modern day petitioner cannot rely on outdated language about *Gideon* errors rising to the level of jurisdictional defects in order to get past procedural defenses, because the Supreme Court has stated in two modern decisions—*Daniels* and *Lackawanna*, both decided in 2001—that procedural defenses do apply to *Gideon*-based claims"); see also *Lee* v. *United States*, No. CIV. A. 02-1837, 2006 WL, *3 (E.D. Pa. March 14, 2006) (petitioner who failed to raise claim that his prior convictions were uncounseled during federal sentencing proceeding was "precluded on federal habeas review to argue that the prior state convictions were 'un-counseled,' i.e., petitioner is procedurally defaulted from raising the *Gideon* exception discussed in *Daniels*").

We now address the claims asserted in the present appeal. The petitioner argues that the allegations in his petition "establish that he was completely deprived of his counsel in the conviction and sentence for sexual assault, and that this uncounseled conviction is enhancing the punishment for another offense." He further claims that "[u]nder federal constitutional law" his allegations establish "custody, and therefore, jurisdiction, in the habeas court." The respondent, the Commissioner of Correction, does not dispute that "the petitioner might be permitted to challenge, by way of habeas corpus, the legality of the sentence for which he currently remains in custody on the ground that it has been adversely affected by an expired conviction obtained in violation of *Gideon* . . . ."[9]

The parties disagree, however, as to whether the habeas court has jurisdiction over the petitioner's claim that, regardless of any impact on a subsequent conviction, he may directly attack the expired conviction itself. The petitioner claims that his petition seeks withdrawal of his guilty plea as to his expired conviction for sexual assault. His application for a waiver of fees, costs and expenses states that his "[c]onviction must be vacated even if [there are] no direct or collateral consequences," and his petition for certification to appeal maintains that he states a claim "even though [his] sentence expired." The habeas court's ruling dismissing the petition did not expressly address this claim. However, because the petitioner raised it in his petition for certification to appeal and in his briefing to this court and because the claim implicates subject matter jurisdiction, we address it. See *Pentland* v. *Commissioner of*

*Correction*, supra, 176 Conn. App. 785 ("[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal" [internal quotation marks omitted]).

On appeal, the petitioner contends that the habeas court had subject matter jurisdiction over his petition directly seeking vacation of the expired sexual assault conviction. The United States Supreme Court precedent addressing the use of an uncounseled conviction in later prosecutions, either as evidence of guilt or as a sentence enhancement, does not support the petitioner's claim that he may attack the expired conviction in the absence of an enhancement. Moreover, circuit courts applying such precedent have recognized that procedural defenses apply to *Gideon* claims, necessarily refuting the proposition that a *Gideon* claim may be raised without limitation.[10] Last, we do not find persuasive the scant, nonbinding, out-of-state authority the petitioner cites in support of his proposition that "the existence of the *Gideon* exception allows the sentencing court to act on the expired conviction, not merely the present or potentially enhanced sentence." To the extent that the petitioner directly challenges the expired 1980 conviction, we conclude that the petitioner has submitted no authority to support a claim that the expired conviction itself may be vacated, and the habeas court's denial of certification to appeal as to this claim was not an abuse of discretion.[11]

## II

The petitioner claims on appeal that his petition "did not seek to alter or modify his parole. Rather, the relief requested was the vacation of the 1980 conviction (which is enhancing the conditions of parole)." We have concluded in part I of this opinion that the habeas court lacked jurisdiction over the petition to the extent that it sought to challenge directly the expired conviction. Thus, all that remained of the petition was a challenge to the conditions of parole imposed on the petitioner.[12] We conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal, where the habeas court properly concluded that it lacked subject matter jurisdiction over the petition to the extent that it challenged the petitioner's classification and conditions of his parole.

We first note that the petition for certification to appeal did not address the specific grounds upon which the habeas court sua sponte dismissed the petition. "This court has determined that a petitioner cannot demonstrate that the habeas court abused its discretion in denying a petition for certification to appeal if the issue that the petitioner later raises on appeal was never presented to, or decided by, the habeas court." ((Internal quotation marks omitted.) *Haughey* v. *Commis-*

*sioner of Correction*, 173 Conn. App. 559, 572, 164 A.3d 849, cert. denied, 327 Conn. 906, 170 A.3d 1 (2017); see also *Melendez* v. *Commissioner of Correction*, 141 Conn. App. 836, 841, 62 A.3d 629 ("[t]he court could not abuse its discretion in denying the petition for certification about matters that the petitioner never raised"), cert. denied, 310 Conn. 921, 77 A.3d 143 (2013).[13]

However, given that the habeas court's decision implicates subject matter jurisdiction, we address the jurisdictional issue raised by the respondent and responded to by the petitioner. See *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 532 (although habeas court committed plain error in failing to disqualify itself, our Supreme Court had jurisdiction, and an independent obligation to determine whether the habeas court lacked subject matter jurisdiction). The respondent argues that the "habeas court correctly concluded that both the classification decisions and the parole decisions regarding this petitioner are entirely discretionary and therefore invoke neither a liberty interest, nor any other constitutionally cognizable interest within the jurisdiction of the habeas court." The petitioner argues that "[t]o the degree that the petition indicates that he is being classified and treated as a sex offender, petitioner has alleged a cognizable liberty interest, sufficient to withstand a sua sponte motion to dismiss at such an early state of the proceedings."

"[I]n order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty. . . . In order . . . to qualify as a constitutionally protected liberty . . . the interest must be one that is *assured* either by statute, judicial decree, or regulation." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Byrd* v. *Commissioner of Correction*, supra, 177 Conn. App. 82.

Our appellate courts have recognized, and the petitioner concedes, that parole eligibility status does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction. Id.; see also *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 261–62, 914 A.2d 1034 (2007). The petitioner maintains, citing *Anthony A.* v. *Commissioner of Correction*, 159 Conn. App. 226, 231, 122 A.3d 730 (2015), aff'd, 326 Conn. 668, 166 A.3d 614 (2017), that "classification as a sex offender, however, can create a cognizable liberty interest." (Emphasis omitted.)

Our resolution of the petitioner's claim depends on an application of the stigma plus test recently adopted by our appellate courts in *Anthony A.* v. *Commissioner of Correction*, 326 Conn. 668, 166 A.3d 614 (2017).[14] The petitioner in *Anthony A.* claimed that he was incorrectly

classified as a sex offender and that he had suffered negative consequences as a result of the incorrect classification. Id., 672. The petitioner had been convicted of unlawful restraint in the first degree, failure to appear, and violation of probation. Id., 671. His wife initially had told police that the petitioner sexually assaulted her, a statement which she later recanted. Id. Thus, the state entered a nolle prosequi on the charge of sexual assault in a spousal relationship. Id. The petitioner alleged that he was classified as a sex offender upon his incarceration, and the trial court assumed for purposes of its ruling that the petitioner had "been classified as a sex offender when he was not really a sex offender." Id., 671 n.2. "As a consequence of the erroneous classification, the petitioner was offered a choice. He could participate in 'sex treatment' that was recommended by his offender accountability plan or risk forfeiture of supervised community release, parole and the opportunity to earn risk reduction earned credit (good time credits)." Id., 672. Under these facts, our Supreme Court concluded that the petitioner sufficiently had alleged a protected liberty interest sufficient to invoke the jurisdiction of the habeas court. Id., 686.

In so concluding, the court analyzed the petitioner's claim pursuant to the "stigma plus" test applied by the federal courts. Id., 680. This inquiry involved a focus on "whether the allegations of the petition demonstrate that the classification was wrongful and stigmatized the petitioner, and that the consequences suffered by the petitioner were 'qualitatively different' from the punishments usually suffered by prisoners, so that they constituted a major change in the conditions of confinement amounting to a grievous loss." Id., 680–81. Our Supreme Court agreed with the federal courts that the "stigma" part of the test was satisfied by the "uniquely stigmatizing" classification as a sex offender, citing as an example the proliferation of Megan's Laws, whereby sex offenders are required to register with law enforcement officials. Id., 681.

Our Supreme Court also made clear that there exists a jurisdictional threshold requirement that the petitioner "must allege the falsehood of the stigmatizing label or classification." Id., 680. The court explained: "As far as the petitioner's burden to demonstrate that the classification is wrongful, for purposes of jurisdiction, that requirement is satisfied by effective pleading and verified in a threshold inquiry—the petitioner simply must claim that the classification is false." Id., 681. In *Anthony A.*, the petitioner satisfied this requirement by claiming that he had not sexually assaulted his wife and noting her retraction of her earlier statements to the contrary. Id., 681–82. In the present case, the petitioner has not alleged facts, which, taken as true, establish "stigma" under the stigma plus test because he fails to satisfy the threshold requirement that he plead that the classification is false. Nowhere in his petition does

he allege that the conduct underlying his conviction of sexual assault did not occur. See *Vega* v. *Lantz*, 596 F.3d 77, 82 (2d Cir. 2010) ("[s]ince Vega did not allege falsity, he was not entitled to relief on his stigma plus due process claim").

Even if this court were to conclude that the stigma factor had been satisfied, the petitioner has failed to establish the "plus" factor. The court in *Anthony A.* noted that federal courts have found allegations of compelled participation in sex offender treatment sufficient to satisfy the "plus" factor, whereas labeling of an inmate as a sex offender and providing the inmate with recommendations for treatment, absent negative consequences for a failure to participate, is insufficient. *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 683–84. Here, the petitioner's sole factual allegation in support of his classification claim is that he was "incarcerated o[n a] violation of parole which consists of using a cell phone in violation of the conditions imposed under the special monitoring unit for sex offenders."[15] He also provides the conclusory allegation that he had "been advised that his 1980 unwanted touching conviction . . . will have petitioner treat[ed] the same as if it was sexual assault in the 1st degree." Although the petitioner's allegations imply that he was subject to a condition of parole imposed and/or monitored by a special sex offender unit, he makes no allegations that he was compelled to participate in any sex offender treatment, let alone that parole eligibility was conditioned upon participation in such treatment. Cf. *Neal* v. *Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997) (finding liberty interest implicated based on "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility").

Because the petitioner has satisfied neither factor of the stigma plus test, we conclude that he has failed to allege sufficient facts to assert a cognizable liberty interest that affords jurisdiction to the habeas court over his claim. Accordingly, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal from its judgment of dismissal.

### III

Last, we address the petitioner's claim under article first, § 8, of the Connecticut constitution. He claims that the "right to counsel provided by the Connecticut constitution is more extensive than that provided in the United States constitution," and that the violation of his right to counsel under the Connecticut constitution "was sufficient to establish jurisdiction in the habeas court to adjudicate his claims." The respondent contends that the petitioner's briefing regarding the breadth of the substantive right to counsel under the Connecti-

cut constitution addresses the "wrong question . . . ." The respondent argues that the issue presented by this case is whether the jurisdictional prerequisite "for bringing an action in our state habeas courts differs from that applicable to habeas actions brought in federal courts." We agree with the respondent that the petitioner's claim under the Connecticut constitution is misdirected.

The petitioner presents his argument pursuant to the multifactor approach our Supreme Court first adopted in *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992). The factors to be considered are "(1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms [otherwise described as public policies]." (Internal quotation marks omitted.) *State* v. *Skok*, 318 Conn. 699, 708, 122 A.3d 608 (2015).

The petitioner's analysis with respect to the *Geisler* factors does not address the central issue presented by this case. With respect to the first factor, the petitioner claims that the language of article first, § 8, of the Connecticut constitution "provides for a defendant's right to be heard by himself and by counsel, as opposed to the sixth amendment's provision for the assistance of counsel in his defense." This court has recognized that "[t]here is no appreciable difference in the text of either the federal or state constitutions except that under our federal constitution the right to act for oneself is implicit whereas in our state constitution that right is express." *State* v. *Orlando*, 163 Conn. App. 155, 164–65, 134 A.3d 708, cert. denied, 320 Conn. 930, 133 A.3d 461 (2016). Given that the right to self-representation is not at issue in the present appeal, the petitioner's briefing on the first factor is not relevant.

With respect to the second factor, the petitioner claims that "Connecticut state and federal decisions pre-*Custis* held that uncounseled felony convictions may not be used as a basis for habitual offender status." See *Wilson* v. *Warden*, 26 Conn. Supp. 464, 466, 227 A.2d 265 (1967) (where prior, uncounseled conviction was used in later conviction as a habitual offender, the court concluded that the Massachusetts conviction obtained without the assistance of counsel "cannot stand" and ordered that petitioner be resentenced as a second offender rather than a third offender); *United States ex rel. Brown* v. *Reincke*, 266 F. Supp. 83, 86 (D. Conn. 1966) (ordering resentencing of petitioner, where uncounseled prior Maine conviction had been improperly used by state of Connecticut in determining the sentence of the petitioner as a habitual offender). As the petitioner concedes, however, both cases involved

Connecticut's habitual offender statute, not claims of adverse parole conditions. Moreover, the petitioner cites to *State* v. *Sostre*, 48 Conn. Supp. 279, 296, 842 A.2d 633 (2002), in which the Superior Court considered a challenge to the use of a prior felony conviction as an aggravant under the death penalty statutes. *Sostre* is distinguishable not only because it arose in the unique context of a death penalty proceeding, but also because the court prefaced its analysis of the claim of ineffective assistance of counsel by noting that "it is not entirely clear to the court that this issue is properly raised in the present proceeding . . . ." Id. Accordingly, we conclude that the authorities cited do not support the petitioner's claims.

The analysis presented under factors four through six likewise is not helpful to the petitioner's claims in this appeal. Rather than direct this court to decisions of sister states having provisions similar to article first, § 8, of the Connecticut constitution, the petitioner instead briefs under factor four certain sister states' allowance of "collateral attacks for reasons other than deprivation of the right to counsel," without explaining how such precedent addressing other constitutional violations impacts the subject of this appeal. The analysis pursuant to factor six suffers from the same defect, in that the petitioner attempts to erase the distinction between right to counsel violations and ineffective assistance of counsel claims, without relating the analysis to his specific claims. With respect to the fifth factor, the petitioner provides a broad discussion of the history of the substantive right to counsel under the Connecticut constitution without explaining how such history could assist this court in reviewing his claim. Accordingly, as the principles cited by the petitioner do not enlighten our analysis of whether the habeas court had subject matter jurisdiction over the petitioner's petition, we reject his claim pursuant to the Connecticut constitution.

We conclude that the habeas court did not abuse its discretion by denying certification to appeal. The jurisdictional issues the petitioner raises are not debatable among jurists of reason, nor has the petitioner shown that a court could resolve the issues in a different manner, and the questions are inadequate to deserve encouragement to proceed further.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Practice Book § 23-24 (a) provides in relevant part: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction . . . ."

[2] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction . . . ."

[3] General Statutes § 52-466 (a) (1) provides: "An application for a writ of

habeas corpus, other than an application pursuant to subdivision (2) of this subsection, shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty."

[4] We note that where a petitioner is on parole from a conviction, he remains "in custody" on that conviction for purposes of habeas court jurisdiction. See *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 529 n.17, 876 A.2d 1178 (2005), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 747, 754, 91 A.3d 862 (2014).

[5] Section 2241 (c) of title 28 of the United States Code provides in relevant part: "The writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ."

[6] Section 2255 (a) of title 28 of the United States Code provides: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

[7] Under the ACCA, the penalty for possession of a firearm by a felon increases from a maximum of ten years in prison to a mandatory minimum sentence of fifteen years and a maximum of life in prison without parole if the defendant has three previous convictions for a violent felony or serious drug offense. See 18 U.S.C. § 924 (e) (2012).

[8] Section 2254 (a) of title 28 of the United States Code provides: "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

[9] For reasons discussed in part II of this opinion, we conclude that the habeas court was without jurisdiction over the petition because the petition alleges only that his classification and conditions of parole have been affected by the allegedly uncounseled conviction.

[10] The petitioner points this court to a case from the United States District Court for the Eastern District of Michigan, *Ward* v. *Wolfenbarger*, 340 F. Supp. 2d 773, 776 (E.D. Mich. 2004), as factually closest to the present case. In *Ward*, the petitioner had been convicted of drug offenses and had been deprived of his sixth amendment right to counsel when the trial court failed to advise him of his rights to appeal from the conviction and his right to appellate counsel if he was indigent. The court initially conditioned the granting of the writ upon the respondent's taking immediate action to afford the petitioner an appeal of right to the Michigan Court of Appeals with the assistance of appellate counsel. Id., 775. On reconsideration, the court issued an unconditional writ, after noting that affording the petitioner a new appeal of right would not vitiate the prejudice arising from the denial of his right to appeal from his thirty-three year old convictions. Id., 776–77. The court explained that *the expired convictions were being used to deny the petitioner parole release on the later convictions*, and that the board had scheduled a public hearing to determine whether the petitioner should be released on parole. In support of its conclusion to grant the unconditional writ, the court stated that it was highly unlikely that any appeal of right could be heard before the scheduled parole hearing. Id.

In the other two cases cited by the petitioner, *State* v. *Peters*, 244 Wis. 2d 470, 473, 628 N.W.2d 797 (2001), and *Brockway* v. *State*, 37 P.3d 427, 430 (Alaska App. 2001), both direct appeals, the defendants claimed that a prior, unconstitutional conviction was used in a prosecution for repeat offenders.

In *Peters*, at issue was a fifth operating after revocation of license proceeding (OAR). *State* v. *Peters*, supra, 244 Wis. 2d 473. The defendant had "moved to invalidate his second OAR conviction in an effort to prevent its use for penalty enhancement purposes in the fifth offense prosecution." Id. The court concluded that "because this prosecution for fifth offense OAR is predicated in part on a prior OAR conviction that was obtained when [the defendant] was not represented by counsel, we conclude that it falls within the right-to-counsel exception to the general rule against collateral attacks on prior convictions *used to enhance subsequent penalties*." (Emphasis added.) Id., 480. Accordingly, the defendant could collaterally attack the prior conviction in the context of the enhanced sentence proceeding.

In *Brockway*, the court concluded that the defendant, who had not claimed a total deprivation of counsel, could not collaterally attack his expired conviction during his sentencing as a second felony offender. *Brockway* v. *State*, supra, 37 P.3d 430. The court noted an exception to this rule—a defendant may attack a prior conviction if the defendant was completely denied the right to counsel, because a deprivation of the right to counsel is equivalent to a lack of jurisdiction. Id.

To the extent *Peters* and *Brockway* stand for the proposition that a defendant may, in the context of an enhanced sentence proceeding, challenge the validity of a prior uncounseled conviction, these cases have no application to the present appeal, which does not arise from a defendant's objection to the use of an uncounseled conviction in an enhanced sentence proceeding.

[11] The petitioner further claims that "[a] Superior Court has inherent authority to vacate a judgment entered without jurisdiction at any time, either on a direct motion or on a collateral attack on the judgment—including this collateral attack on the 1980 conviction." He cites *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 682 A.2d 1046 (1996), which provides that "[a] judgment void on its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification . . . . It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void." (Internal quotation marks omitted.) Id., 25. Even assuming that the petitioner ultimately could demonstrate that the expired conviction was void on the basis of a violation of his right to counsel, our conclusion that the habeas court lacked jurisdiction over the petition is dispositive of this appeal.

[12] The petitioner claims that "[i]f a petitioner challenges his expired conviction in the context of its effect on an outstanding sentence of parole, the habeas court has the authority to consider the merits of those claims," citing *Antonelli* v. *Lappin*, 134 Fed. Appx. 700, 701 (5th Cir. 2005). In that case, the United States Court of Appeals for the Fifth Circuit held that the District Court correctly concluded that the petitioner could not attack his expired conviction, but that the District Court did have jurisdiction over the petitioner's claim that the allegedly unconstitutional conviction resulted in a forfeiture of nineteen months of parole.

In a subsequent decision, the Fifth Circuit clarified the defendant's position, which was that the "effect of this forfeiture . . . is that nineteen months of parole have now been 'tacked on' to the end of the present sentence he is serving, thereby 'making the time [he must] serve 19 months longer than it would otherwise be' " without the unconstitutional conviction. *Antonelli* v. *Lappin*, 338 Fed. Appx. 379, 381 (5th Cir. 2009). The Fifth Circuit stated that the District Court had jurisdiction because the petitioner had challenged the unconstitutional conviction "in the context of its effect on his *outstanding* sentence of parole . . . ." (Emphasis added; internal quotation marks omitted.) Id. In so holding, the Fifth Circuit clarified that the District Court's findings as to the merits of the petitioner's claims were "not for the purpose of declaring the 1997 conviction invalid for all purposes but rather for the limited purpose of determining whether the 1997 conviction requires the forfeiture of nineteen months of 'street time,' as determined by the [United States] Parole Commission." Id., 382.

We are not persuaded that *Antonelli* supports the petitioner's claims. The petitioner in *Antonelli* specifically had alleged that his uncounseled conviction was used to "tack on" an additional nineteen months to the end of the sentence which he was currently serving. Moreover, the Fifth Circuit made clear that the inquiry into the allegedly uncounseled conviction was solely for the purpose of whether the conviction required the forfeiture of the petitioner's street time.

[13] Although the petitioner contends in his reply brief that it is an abuse of discretion for the habeas court to deny a petition sua sponte without notice and a hearing, the court is not required to conduct a hearing before dismissing a petition. See *Pentland* v. *Commissioner of Correction*, supra, 176 Conn. App. 787 (habeas court was not required to hold hearing before dismissing petition where "the petitioner had not satisfied his obligation to allege sufficient facts in his pleading, which, if proved, would establish that he was in custody at the time he filed the petition").

[14] The respondent claims that the stigma plus test is not applicable, relying solely upon *Connecticut Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 6, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). In *Doe*, the United States Supreme Court declined to reach the question of whether the defendant had established a liberty interest because it concluded that even assuming a liberty interest existed, due process did not entitle the defendant to a hearing to determine

his dangerousness prior to the offender being required to register as a sex offender. Id., 7–8. Dangerousness was "not material under the Connecticut statute"; id., 7; and thus, no hearing was required. Id. 7–8. Because we address the question of whether the petitioner has sufficiently alleged a protected liberty interest, we reject the respondent's claim that the stigma plus test is inapplicable.

[15] In his brief, the petitioner requests this court to take judicial notice of information contained on the Department of Correction website regarding a specialized unit that provides intensive supervision for sex offenders. We decline to take judicial notice of any documents not before the habeas court in this matter. See *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 261, 990 A.2d 910 (2010) (declining to take judicial notice of underlying criminal record where petitioner had burden of alleging facts in petition demonstrating he was in custody of respondent, and he failed to do so), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012); *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 194, 932 A.2d 467 (2007) ("we review the actions of the habeas court on the record and may not consider extraneous material later submitted directly to us"), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008).

---------------------------------------