******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

O'NEIL O'REAGAN *v.* COMMISSIONER
OF CORRECTION
(AC 44390)

Moll, Alexander and Bear, Js.

*Syllabus*

The petitioner, who had been convicted on guilty pleas, of the crimes of
burglary in the second degree, conspiracy to commit robbery in the
second degree and sale of a narcotic substance, sought a writ of habeas
corpus, claiming, inter alia, ineffective assistance and deficient perfor-
mance of his trial counsel. Following his pleas, the trial court sentenced
the petitioner to a ten year term of incarceration, execution suspended
after four years, followed by five years of probation for the burglary
conviction, three years of incarceration for the robbery conviction, and
one year of incarceration for the narcotics conviction, to be served
concurrently. Several years later, the petitioner, who was born in
Jamaica, was taken into federal immigration custody and removal pro-
ceedings were initiated. At the time he was taken into custody, the
sentences for his robbery and narcotics convictions had fully expired,
but he was still serving his sentence for burglary due to the pendency
of a violation of probation, which interrupted the period of the sentence.
Before the habeas court, the respondent Commissioner of Correction
alleged that the court lacked jurisdiction over the habeas petition
because the petitioner was not in custody as a result of the convictions
and sentences he challenged, and, after a hearing, the court determined
that, at the time the petitioner filed his habeas petition, he was not in
custody on the robbery and narcotics convictions and dismissed the
claims related to those convictions. Following a trial on the remaining
claims, the court rendered judgment denying the petition, from which the
petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner was not in
   custody on the convictions of conspiracy to commit robbery and sale
   of a narcotic substance at the time he filed the habeas action and it did
   not have jurisdiction over those two convictions: it was undisputed that
   the petitioner was sentenced to concurrent sentences of incarceration
   of three years for the robbery conviction and one year for the narcotics
   conviction, and, because the sentences for those two convictions fully
   expired before the petitioner filed his habeas petition, the petitioner was
   no longer in custody on those two convictions; moreover, the petitioner's
   claim that, if the habeas court did not have jurisdiction over all three
   convictions, it would be unable to fashion an appropriate remedy with
   respect to his ineffective assistance claims, misinterpreted the aggregate
   package theory of sentencing as expanding the habeas court's ability
   to decide claims regarding convictions that fully expired prior to the
   filing of the habeas petition, as the aggregate package theory does not
   expand the jurisdiction of the habeas court to decide claims regarding
   convictions that have fully expired prior to the filing of the habeas peti-
   tion.

2. The habeas court did not err in denying the habeas petition with respect
   to the petitioner's claim that his trial counsel provided ineffective assis-
   tance with respect to the petitioner's guilty plea to the charge of burglary
   in the second degree:

   a. The petitioner could not prevail on his claim that his trial counsel
   failed to investigate and to advise him adequately regarding the strengths
   and weaknesses of the state's case, the record having revealed that
   the habeas court credited trial counsel's testimony and found that trial
   counsel had reviewed the discovery provided to him and determined
   that no further investigation was necessary, and the petitioner did not
   provide trial counsel with any potential witnesses to investigate in sup-
   port of a defense, did not provide any additional favorable evidence that
   would have supported his defense at trial, and failed to show that further
   investigation by trial counsel would have yielded any evidence that would
   have aided in his defense at trial or that would have altered trial counsel's
   advice regarding the strengths and weaknesses of the state's case against
   the petitioner.

b. The petitioner could not prevail on his claim that his trial counsel rendered deficient performance by failing to advise him adequately regarding the immigration consequences of his guilty plea; the decision in *Padilla* v. *Kentucky* (559 U.S. 356), requiring defense counsel to advise a noncitizen client of the immigration consequences of a guilty plea, does not apply retroactively under federal law pursuant to *Chaidez* v. *United States* (568 U.S. 342) or under Connecticut law pursuant to *Thiersaint* v. *Commissioner of Correction* (316 Conn. 89), and, as such, the rule announced in *Padilla* did not apply to the petitioner's case because such advice was not constitutionally required under either the United States or the Connecticut constitution at the time the petitioner entered his guilty plea.

Submitted on briefs January 4—officially released April 26, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, dismissed in part the habeas petition; thereafter, the remaining claims were tried to the court, *Bhatt, J.*, who denied the habeas petition as to the remaining claims; judgment dismissing in part and denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Deren Manasevit*, assigned counsel, filed a brief for the appellant (petitioner).

*Sarah Hanna*, senior assistant state's attorney, *Margaret E. Kelley*, state's attorney, and *Amy L. Bepko-Mazzocchi*, supervisory assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

ALEXANDER, J. The petitioner, O'Neil O'Reagan, appeals from the judgment of the habeas court dismissing in part and denying his petition for a writ of habeas corpus. The petitioner claims that the court erred (1) in dismissing in part his habeas petition after finding that he was not in custody on two of his challenged convictions, and (2) in denying his habeas petition after concluding that his trial counsel had not provided ineffective assistance. We disagree with both of the petitioner's claims and, therefore, affirm the judgment of the habeas court.

The habeas court's memorandum of decision sets forth the following facts and procedural history. The petitioner's convictions for burglary and conspiracy to commit robbery "stemmed from two incidents that took place in close temporal proximity on November 5, 2007. On that date . . . several unknown males entered the apartment of David Gunnison in Shelton . . . . The males who broke into the apartment demanded to know where drugs were hidden in the apartment. One male was armed with what appeared to be a small silver handgun, another with a baseball bat and the third with a small shovel. . . . A small amount of marijuana was taken from the apartment, as well as cell phones, cash and personal possessions of the other individuals present in the apartment."

Gunnison called the police to report the burglary and admitted to selling drugs. He called his stolen cell phone pretending to be a customer seeking to buy drugs and set up a purchase. Police officers set up surveillance at the agreed upon location for the transaction and observed a vehicle drive past Gunnison. Gunnison told officers that the vehicle "was occupied by several black males and one Hispanic male. Three males exited the vehicle and called to Gunnison to approach them. At this point, officers began to approach the area and the three males fled the scene. Two of the individuals were apprehended after a chase and identified as Shawn Troupe and Anthony Martino. The third individual escaped. Shortly thereafter, the police stopped the [vehicle] and arrested the occupants: Ashley Doy and Joseph Pellechio." The four individuals apprehended by the police first denied involvement in the residential burglary but eventually made statements indicating their involvement in the burglary and a plan "to arrange the sale of the [stolen] drugs as a pretense to rob whoever the caller was." The individuals identified the petitioner as a participant in both the burglary and the conspiracy to rob Gunnison.

"Based on this information, a search warrant for [the petitioner's] residence was approved. A cell phone from the residential burglary was found inside his residence. [The petitioner] agreed to speak with officers and stated

that he, along with Troupe, Pellechio, Doy and Martino did go to Gunnison's residence to buy marijuana, but [claimed that] there was no burglary. They all returned to his house and then the other four left for a while without him, returning with cell phones and marijuana. They did not explain the source of either and then left again to sell marijuana to an unknown individual. According to [the petitioner], Pellechio called him the next day to say that the others had been arrested. [The petitioner] then disposed of the cell phones left behind in the garbage can outside his house. Police recovered four cell phones and three iPods from a black plastic bag in the garbage." The petitioner was arrested and charged in connection with these incidents as a result of the police investigation.

On July 21, 2008, the petitioner entered guilty pleas to burglary in the second degree in violation of General Statutes (Rev. to 2007) § 53a-102, conspiracy to commit robbery in the second degree in violation of General Statutes § 53a-48 and General Statutes (Rev. to 2007) § 53a-135, and sale of a narcotic substance in violation of General Statutes (Rev. to 2007) § 21a-277 (a).[1] The plea agreement called for a maximum sentence of ten years of incarceration, execution suspended after five years, followed by five years of probation, with the right to argue for a lesser sentence. On November 14, 2008, the trial court sentenced the petitioner to serve a ten year term of incarceration, execution suspended after four years, followed by five years of probation for the burglary conviction, three years of incarceration for the conspiracy to commit robbery conviction, and one year of incarceration for the sale of a narcotic substance conviction. Each sentence imposed was ordered to be served concurrently.

In 2017, the petitioner was taken into federal immigration custody and removal proceedings were initiated.[2] At the time he was taken into custody, the sentences for his convictions of conspiracy to commit robbery in the second degree and sale of a narcotic substance had fully expired. The petitioner was still serving his sentence for the burglary in the second degree conviction due to the pendency of a violation of probation, which interrupted the period of the sentence. See General Statutes § 53a-31 (b).

In December, 2017, the petitioner initiated this habeas action and, on August 15, 2018, he filed an amended habeas petition, which contained three counts. In count one, the petitioner alleged a due process violation pursuant to the United States and Connecticut constitutions and claimed that his guilty pleas were "not made knowingly, intelligently and voluntarily because he did not know or understand the probability of deportation/ removal from the United States under the terms of the plea agreement." The petitioner alleged that, if he had known the immigration consequences, he would not

have entered guilty pleas. In count two, the petitioner alleged ineffective assistance of his trial counsel, Attorney Mark Solak, pursuant to both the United States and Connecticut constitutions, as a result of Solak's (1) failure to investigate adequately and advise him regarding his plea and likelihood of success at trial, (2) failure to adequately make his immigration status and the probability of deportation/removal part of the plea bargaining process, and (3) "affirmative misadvice about the probability of [his] deportation/removal from the United States . . . ." Similarly, in count three, the petitioner alleged that, under the Connecticut constitution, Solak had rendered deficient performance for failing to "adequately make [his] immigration status and the probability of deportation/removal from the United States part of the plea bargaining process" and failing to advise him adequately regarding the probability of deportation/removal under the terms of the plea. Only counts two and three of the amended habeas petition are relevant to this appeal.

In his return, the respondent, the Commissioner of Correction, alleged, inter alia, that the court lacked jurisdiction over the habeas petition because "the petitioner was not 'in custody' as a result of the convictions and sentence that he challenges." After a hearing, the court, *Newson, J.*, on July 15, 2019, issued an oral decision in which it concluded that, at the time the petitioner filed his habeas petition, he was not in custody on the conspiracy to commit robbery in the second degree and sale of a narcotic substance convictions. It concluded, however, that the petitioner was in custody with respect to his burglary conviction. Accordingly, the court dismissed in part the petitioner's habeas claims related to the conspiracy to commit robbery and narcotics convictions.

A trial on the remaining claims was held on August 28, October 15, and December 17, 2019. On September 1, 2020, the habeas court, *Bhatt, J.*, denied the petition for a writ of habeas corpus. The court declined to revisit Judge Newson's dismissal of the petitioner's challenges to the conspiracy to commit robbery and narcotics convictions, concluding that this earlier dismissal was the law of the case.[3] With regard to the petitioner's claims of ineffective assistance of counsel, the court concluded that Solak had not rendered deficient performance in his investigation and advice to the petitioner. It further concluded that Solak was not constitutionally required to advise the petitioner of the immigration consequences of his guilty plea. After denying the habeas petition, the court granted the petition for certification to appeal.

On appeal, the petitioner challenges (1) the dismissal in part of his habeas petition by Judge Newson for lack of subject matter jurisdiction and Judge Bhatt's refusal to revisit the dismissal, and (2) Judge Bhatt's denial of

his habeas petition as to the remaining allegations after concluding that his trial counsel had not provided ineffective assistance. We address each claim in turn.

I

The petitioner first claims that the habeas court erred in dismissing in part his habeas petition for lack of subject matter jurisdiction after concluding that, at the time he filed the present habeas action, he was not in custody on the conspiracy to commit robbery and sale of a narcotic substance convictions. We conclude that the habeas court properly determined that the petitioner was not in custody on those two convictions and, therefore, we affirm the dismissal.

The following additional facts and procedural history are relevant to our resolution of this claim. On June 20, 2019, the court, *Newson*, *J.*, issued an order and scheduled a hearing, pursuant to Practice Book § 23-29,[4] to determine whether the petition should be dismissed because the court lacked jurisdiction. After argument, the court issued an oral decision in which it dismissed the claims in the petition regarding the conspiracy to commit robbery and sale of a narcotic substance convictions.

The court stated: "In 2008, the petitioner received a one year and a three year concurrent sentence to [the sentence for his burglary in the second degree conviction]. . . . [For] consecutive sentences, our law specifically allows a quote unquote technically expired consecutive sentence to be challenged. That is because the resolution of one consecutive sentence will actually have a significant and direct impact on the other sentence since those are essentially considered one continuing stream of incarceration. However here . . . the claim is simply that the petitioner received two relatively minimal concurrent sentences to the current sentence [for burglary in the second degree] that he is serving. Those sentences would've expired at the latest some time in 2009 as to the one year concurrent sentence and sometime in 2011 as to the three year concurrent sentence, which was some six years before this petition was filed. Given the current status of our case law that those periods of incarceration had fully expired prior to the time the petition was filed . . . [and] [t]o the extent that the petition makes allegations related to those two convictions, the court dismisses those claims pursuant to [Practice Book § 23-29], because the habeas court lacks jurisdiction because the petitioner was not in custody as defined under habeas law at the time the petition was received."

In its decision after the habeas trial, the court, *Bhatt*, *J.*, declined to revisit the earlier decision in which the court, *Newson*, *J.*, dismissed the petitioner's challenges to his conspiracy to commit robbery and sale of a narcotic substance convictions. With regard to this claim,

the court stated that, "[i]n order for this court to have jurisdiction, [the petitioner] needed to be in custody as a result of those convictions. The convictions for conspiracy to commit robbery and sale of narcotics expired long before the filing of the instant petition. Judge Newson's dismissal of those allegations is the law of the case and this court sees no reason to revisit it."[5]

On appeal, the petitioner claims that the court erred in concluding that he was not in custody on all three convictions and, consequently, in dismissing in part his habeas petition for lack of subject matter jurisdiction. Specifically, he argues that "because the convictions were interdependent parts of a global disposition, once the jurisdictional prerequisite was met by his custody on one of the convictions, the habeas court had jurisdiction to reach all of the convictions covered by the global disposition." He further contends that the aggregate package theory applies and gives the court authority to reach all of the convictions and sentences in the package and that the "habeas court would be unable to fashion a remedy for ineffectiveness in connection with [his] guilty plea to burglary if the court could neither restructure the sentences on the other charges to reflect the original intent of the parties nor nullify the entire plea agreement, vacating all of [his] guilty pleas." We disagree.

We begin our analysis by setting forth the applicable standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 696, 6 A.3d 52 (2010).

We next set forth the relevant legal principles that govern our review of this claim. "It is well established that, for a court to have jurisdiction to entertain a habeas petition seeking to challenge the legality of a criminal conviction, the petitioner must be in the custody of the respondent *as the result of that conviction* at the time that the petition is filed." (Emphasis in original.) *Goguen* v. *Commissioner of Correction*, 341 Conn. 508, 528, 267 A.3d 831 (2021).

General Statutes § 52-466 (a) (1) provides in relevant part that "[a]n application for a writ of habeas corpus . . . shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty." Our courts have explained that "the custody requirement in § 52-466 is jurisdictional in nature because the history and purpose of the writ of habeas corpus establish that the habeas court lacks the power to act on a habeas

petition absent the petitioner's allegedly unlawful custody." (Internal quotation marks omitted.) *Vitale* v. *Commissioner of Correction*, 178 Conn. App. 844, 852, 178 A.3d 418 (2017), cert. denied, 328 Conn. 923, 181 A.3d 566 (2018). "[A] petitioner whose conviction has expired fully prior to the filing of a habeas petition is not in 'custody' on that conviction within the meaning of § 52-466, despite the alleged existence of collateral consequences flowing from that conviction." *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 530, 876 A.2d 1178 (2004), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014).

Our courts, however, have recognized an exception to the custody requirement. "A habeas petitioner who is serving consecutive sentences may challenge a future sentence even though he is not serving that sentence at the time his petition is filed . . . and he may challenge a consecutive sentence served prior to his current conviction if success could advance his release date. . . . In other words, the . . . courts view prior and future consecutive sentences as a continuous stream of custody for purposes of the habeas court's subject matter jurisdiction. . . . Our courts have not extended this exception to concurrent sentences, which do not create a continuous stream of custody because they do not, by their nature, extend the term of incarceration." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, 170 Conn. App. 747, 752?53, 155 A.3d 823, cert. denied, 325 Conn. 902, 155 A.3d 1271 (2017); see also *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 574 n.9, 877 A.2d 761 (2005).

In the present case, the parties dispute whether the habeas court had jurisdiction over two of the petitioner's convictions: the conspiracy to commit robbery conviction and the sale of a narcotic substance conviction. It is undisputed, however, that on November 14, 2008, the petitioner was sentenced to concurrent sentences of incarceration of three years for the conspiracy to commit robbery conviction and one year for the sale of a narcotic substance conviction. Because the sentences for those two convictions fully expired well before the petitioner filed his habeas petition in December, 2017, the petitioner was no longer in custody on those two convictions. Furthermore, the exception to the custody requirement discussed in *Foote* v. *Commissioner of Correction*, supra, 170 Conn. App. 752–53, does not apply because the petitioner's sentences for those convictions were concurrent to the sentence for burglary. Therefore, the habeas court correctly concluded that it did not have jurisdiction over those two convictions.

The petitioner acknowledges that the exception to the custody requirement that applies to consecutive sentences does not apply in his case, but nonetheless argues that the aggregate package theory of sentencing

allows the habeas court to exercise jurisdiction over all three of his convictions because they were part of a global plea agreement. The petitioner, however, misinterprets the aggregate package theory of sentencing as expanding the habeas court's ability to decide claims regarding convictions that fully expired prior to the filing of the habeas petition.

"The purpose of the aggregate package theory of sentencing is to ensure that, notwithstanding the judgment of the reviewing court, the original sentencing intent of the trial court is effectuated." *State* v. *Johnson*, 316 Conn. 34, 40, 111 A.3d 447 (2015). Our Supreme Court has held that "when a case involving multiple convictions is remanded for resentencing, the trial court is limited by the confines of the original sentence in accordance with the aggregate package theory set forth in *State* v. *Raucci*, [21 Conn. App. 557, 563, 575 A.2d 234 (1990)] and later adopted by [our Supreme Court] in *State* v. *Miranda*, [260 Conn. 93, 129–30, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002)].

"In *Miranda*, [our Supreme Court] recognized that the defendant, in appealing his conviction and punishment, has voluntarily called into play the validity of the entire sentencing package, and, thus, the proper remedy is to vacate it in its entirety. More significantly, the original sentencing court is viewed as having imposed individual sentences merely as component parts or building blocks of a larger total punishment for the aggregate convictions and, thus, to invalidate any part of that package without allowing the court thereafter to review and revise the remaining valid convictions would frustrate the court's sentencing intent. . . . Accordingly, the [resentencing] court's power under these circumstances is limited by its original sentencing intent as expressed by the original total effective sentence . . . . It may, therefore, simply eliminate the sentence previously imposed for the vacated conviction, and leave the other sentences intact; or it may reconstruct the sentencing package so as to reach a total effective sentence that is less than the original sentence but more than that effected by the simple elimination of the sentence for the vacated conviction. The guiding principle is that the court may resentence the defendant to achieve a rational, coherent [sentence] in light of the remaining convictions, as long as the revised total effective sentence does not exceed the original." (Citation omitted; internal quotation marks omitted.) *State* v. *Tabone*, 292 Conn. 417, 427–28, 973 A.2d 74 (2009).

The petitioner asserts that if the habeas court does not have jurisdiction over all three convictions, it will be unable to fashion an appropriate remedy with respect to his ineffective assistance of counsel claims. The aggregate package theory, however, merely provides a

remedy: after the court invalidates a conviction that is part of an aggregate package, the court must vacate the entire sentence and, upon remand, the resentencing court may reconstruct the sentencing package or, alternatively, leave the sentence for the remaining valid conviction or convictions intact. See *State* v. *Miranda*, 274 Conn. 727, 735 n.5, 878 A.2d 1118 (2005). This remedy does not expand the jurisdiction of the habeas court to decide claims regarding convictions that have fully expired prior to the filing of the habeas petition. The aggregate package theory of sentencing does not apply to the petitioner's claim that he was "in custody" on the conspiracy to commit robbery and narcotics convictions and, therefore, his claim must fail. Consequently, the petitioner also failed to establish his claim that Judge Bhatt erred in declining to revisit the decision of Judge Newson dismissing in part the habeas petition.

## II

The petitioner next claims on appeal that the court erred in denying his petition after concluding that Solak had not provided ineffective assistance in connection with Solak's advice regarding the petitioner's guilty plea. Specifically, the petitioner argues that Solak failed to investigate and to advise him adequately regarding the strengths and weaknesses of the state's case and the immigration consequences of a guilty plea. We disagree with both of these arguments.

## A

The petitioner contends that Solak failed to investigate and to advise him adequately regarding the strengths and weaknesses of the state's case, including possible defenses that could be pursued at trial and the sentence that he would likely receive if he were convicted after a trial. We disagree.

The following additional facts, as found by the habeas court, are relevant to our resolution of this claim. At the habeas trial, the petitioner claimed that Solak was "ineffective in failing to investigate a potential defense and in failing to advise him of the likelihood of success at trial. [The petitioner] identifies this defense as a 'lack of objective evidence against [him] and the obvious motive to curry favor with the state possessed by the [codefendants].' " The court found that Solak "did not conduct any independent investigation into the matter but did review all the discovery provided to him and made the assessment that no further investigation was necessary. [Solak] noted that the petitioner did not provide him with any potential witnesses to investigate in support of a defense. He testified that he viewed the case against [the petitioner] as strong and the likelihood of success at trial was slim. He conveyed this information to [the petitioner]. It is unclear what [the petitioner] seeks to have investigated. The information that would support his defense—the lack of identification of [the

petitioner] by any of the individuals present inside the residence, the numerous inconsistent statements given by the codefendants and the number of perpetrators of the burglary—were all contained within the police reports and statements that were available to, and reviewed by, [Solak]. Based on his analysis of the case, faced with statements by all four codefendants that [the petitioner] was involved in the residential burglary and the attempted robbery thereafter, [Solak] made the determination that a trial where the defense was that [the petitioner] was either simply 'along for the ride' or not present at either incident would not be successful and counseled [the petitioner] that if he wished to follow that path, he would likely be convicted and face a sentence of at least ten years."

The court further found that Solak "did not tell [the petitioner] what he should do; rather he advised him of the possible outcomes and their likelihood. . . . [Solak] did not recollect whether he had given [the petitioner] an estimate of the sentence he should expect after trial if convicted but surmised that based on his analysis of the case he would have advised [the petitioner] to expect a sentence of greater than ten years' incarceration."

The court reasoned that, even if the codefendants could be cross-examined at a trial regarding "a concerted plan to point the finger at [the petitioner] and their desire to receive favorable treatment by cooperating with the state, it does not then follow that the evidence to be provided by the codefendants was unsubstantial or unreliable and would be dismissed by a jury. None of these codefendants testified at the habeas trial; thus, this court's assessment of their potential testimony is premised on the same statements and information available to [Solak]. Certainly, [Solak] was correct in advising [the petitioner] that if the jury believed one of the codefendants that he was at or involved in the planning of either of the incidents, he would be found guilty. In addition, there was physical evidence—one or more items that were reportedly taken during the residential burglary—that was recovered at [the petitioner's] residence. . . .

"[T]he court credits [Solak's] testimony that he reviewed the discovery provided to him, discussed the state's evidence with [the petitioner] and advised [the petitioner] of his alternatives, including how he viewed the evidence and the likely outcome at trial. There is no deficient performance. This claim must be denied."

We begin by setting forth the applicable standard of review. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court consti-

tuted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 703–704, 184 A.3d 804, cert. denied, 330 Conn. 939, 195 A.3d 692 (2018).

We next set forth the legal principles relevant to a claim of ineffective assistance of counsel in connection with a guilty plea. "The [long-standing] test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . . Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." (Internal quotation marks omitted.) *Freitag* v. *Commissioner of Correction*, 208 Conn. App. 635, 642, 265 A.3d 928 (2021).

"[I]n order to determine whether the petitioner has demonstrated ineffective assistance of counsel [when the conviction resulted from a guilty plea], we apply the two part test enunciated by the United States Supreme Court in *Strickland* [v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and *Hill* [v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. . . . In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .

"To satisfy the performance prong under *Strickland-Hill*, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . .

"To satisfy the prejudice prong [under *Strickland-Hill*], the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, supra, 180 Conn. App. 704–705. "Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 12, 242 A.3d 107, cert. denied, 335 Conn. 983, 242 A.3d 105 (2020).

After our review of the record and based on the underlying facts found by the habeas court, we agree with the court's conclusion that Solak provided the petitioner with reasonably competent advice regarding his guilty plea. The habeas court credited Solak's testimony and found that he had reviewed the discovery provided to him and determined that no further investigation was necessary. The petitioner did not provide Solak with any potential witnesses to investigate in support of a defense, and, at the habeas trial, the petitioner did not provide any additional favorable evidence that would have supported his defense at trial.[6] We agree with the habeas court's conclusion that the petitioner failed to show that further investigation by Solak would have yielded any evidence that would have aided in the petitioner's defense at trial or that would have altered Solak's advice regarding the strengths and weaknesses of the state's case against the petitioner. See *Clinton S.* v. *Commissioner of Correction*, 174 Conn. App. 821, 836, 167 A.3d 389 ("[t]he burden to demonstrate what benefit additional investigation would have revealed is on the petitioner" (internal quotation marks omitted)), cert. denied, 327 Conn. 927, 171 A.3d 59 (2017).

Although the petitioner points to weaknesses in the state's case against him,[7] Solak reasonably advised the petitioner that he viewed the case against the petitioner as strong and that the likelihood of success at trial was slim despite such possible weaknesses. See *Humble* v. *Commissioner of Correction*, supra, 180 Conn. App. 704 ("[r]easonably competent attorneys may advise their clients to plead guilty even if defenses may exist" (internal quotation marks omitted)). As the habeas court noted, although the codefendants could be cross-examined at trial and their credibility undermined, the jury could have found at least some of their testimony to be reliable and returned a guilty verdict. In addition to the statements made by the codefendants inculpating the petitioner, physical evidence of items taken during the burglary were seized at the petitioner's home. Solak advised the petitioner that if he were convicted after trial, he would likely receive a sentence of at least ten years of imprisonment. Moreover, Solak did not tell the petitioner what he should do with respect to the state's plea offer; instead, Solak advised him regarding the possible outcomes and their likelihood, leaving the ultimate choice up to the petitioner. The record reveals

that the petitioner failed to meet his burden to overcome the presumption that Solak provided competent advice with regard to his guilty plea.

B

Next, the petitioner contends that Solak rendered deficient performance by failing to advise him adequately regarding the immigration consequences of his guilty plea. We disagree.

The following additional facts, as found by the habeas court, are relevant to our resolution of this claim. "While immigration consequences can be taken into account in fashioning an appropriate sentence, both [Solak] and [Supervisory Assistant State's Attorney Charles Stango], the trial prosecutor, were of the opinion that this was not such a case, given the seriousness of the allegations and the potential punishment faced by [the petitioner]. . . . According to [Solak], at no time did [the petitioner] indicate that he wished to go to trial for immigration reasons. Had he so insisted, [Solak] was prepared to go to trial. . . . [D]uring the [petitioner's] plea, [Solak] stated for the record that [the petitioner] was not a citizen and that they had discussed the possibility of deportation. He testified that it was practice at the time of [the petitioner's] plea to advise clients with immigration issues to consult with an immigration attorney."

The court rejected the petitioner's claim that Solak rendered deficient performance in failing to advise him of the immigration consequences of his guilty plea. It concluded that there was no difference in the standard for ineffective assistance of counsel pursuant to the state and federal constitutions. Therefore, because the federal constitution at that time did not require Solak to advise the petitioner about immigration consequences of a plea, the state constitution likewise did not require such action.

As we set forth in part II A of this opinion, our standard of review of a habeas court's judgment on claims of ineffective assistance of counsel is well settled. "[T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, supra, 180 Conn. App. 703–704.

We next set forth the legal principles applicable to a claim that counsel rendered deficient performance by failing to advise the petitioner of the immigration consequences of a guilty plea. In *Padilla* v. *Kentucky*, 559 U.S. 356, 360, 366, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the United States Supreme Court held that the federal constitution's guarantee of effective assistance of counsel requires defense counsel to accurately

advise a noncitizen client of the immigration consequences of a guilty plea.

Subsequently, the United States Supreme Court addressed the question of whether its decision in *Padilla* applied retroactively in *Chaidez* v. *United States*, 568 U.S. 342, 344, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013). The court concluded that the decision in *Padilla* announced a "new rule" and, therefore, it did not apply retroactively. Id., 344, 347, 349. In making that determination, the court stated: "*Padilla* would not have created a new rule had it only applied *Strickland*'s general standard to yet another factual situation—that is, had *Padilla* merely made clear that a lawyer who neglects to inform a client about the risk of deportation is professionally incompetent.

"But *Padilla* did something more. Before deciding if failing to provide such advice fell below an objective standard of reasonableness, *Padilla* considered a threshold question: Was advice about deportation categorically removed from the scope of the [s]ixth [a]mendment right to counsel because it involved only a collateral consequence of a conviction, rather than a component of the criminal sentence? . . . In other words, prior to asking *how* the *Strickland* test applied (Did this attorney act unreasonably?), *Padilla* asked *whether the Strickland* test applied (Should we even evaluate if this attorney acted unreasonably?). And as we will describe, that preliminary question about *Strickland*'s ambit came to the *Padilla* [c]ourt unsettled—so that the [c]ourt's answer (Yes, *Strickland* governs here) required a new rule." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) Id., 348–49.

Our Supreme Court, in *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 93, 117, 111 A.3d 829 (2015), held that the decision in *Padilla* did not apply retroactively under Connecticut law. Our Supreme Court rejected the petitioner's contention that the rule announced in *Padilla* was required by prevailing professional norms in Connecticut at the time of the petitioner's trial and, therefore, it was not a new rule. Id., 113–14. The court concluded that, "even if professional norms at the time the petitioner entered his guilty plea required that trial counsel inform a noncitizen criminal defendant of a plea's virtually mandatory deportation consequences, the rule announced in *Padilla* was a new rule under Connecticut law because more than one Connecticut court had noted several years before the petitioner's plea that such advice was not constitutionally required." Id., 116–17.

We agree with the habeas court's conclusion that the rule announced in *Padilla* requiring defense counsel to advise a noncitizen client of the immigration consequences of a guilty plea does not apply to the petitioner's case because such advice was not constitutionally

required—under either the United States or the Connecticut constitution—at the time the petitioner entered his guilty plea. See id., 93. Therefore, the petitioner's claim that Solak rendered deficient performance by failing to advise him of the immigration consequences of his guilty plea must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner's conviction for violating General Statutes (Rev. to 2007) § 21a-277 (a) was related to an incident that had occurred on December 17, 2007.

[2] At the habeas trial, the petitioner testified that he was born in Jamaica.

[3] The petitioner had renewed his arguments regarding Judge Newson's dismissal of his challenges to the conspiracy to commit robbery and sale of narcotic substance convictions after the close of evidence and in his posttrial brief.

[4] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction . . . ."

[5] We note that the law of the case doctrine does not restrict the court's ability to review a claim relating to the court's subject matter jurisdiction. See *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 697–99, 620 A.2d 780 (1993). "The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Internal quotation marks omitted.) *Stones Trail, LLC* v. *Weston*, 174 Conn. App. 715, 738, 166 A.3d 832, cert. denied, 327 Conn. 926, 171 A.3d 60 (2017), and cert. dismissed, 327 Conn. 926, 171 A.3d 59 (2017).

[6] At the habeas trial, the petitioner presented Lindsay Brunswick as a witness. Brunswick was one of the individuals present in Gunnison's residence at the time of the burglary. She testified that she remembered three people with three different weapons, but could not identify any suspect.

[7] In his brief, the petitioner discusses weaknesses in the state's case against him relating to each of the three convictions and claims that Solak could have used these weaknesses as part of his defense at trial. He points to the fact that none of the victims identified the petitioner and that one of the victims testified at the habeas trial that she believed there were three individuals who committed the burglary, which would account for the three codefendants who had confessed to being present, but not the petitioner. The petitioner also points to his own testimony to show that the physical evidence of the burglary found at his residence, including cell phones and iPods, "were simply left behind by the others" and do not directly tie him to the burglary or the conspiracy to commit robbery. With regard to the narcotics conviction, he argues that "the state would have had to rely on the testimony of an informant whose motivation and credibility would be an issue" and that the state may not have even presented the confidential informant at trial.